IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNCHARTED LABS, INC. d/b/a Udio.com and UNKNOWN DEFENDANTS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 25-cv-12613 <br><br> District Judge Sara Ellis <br><br> Magistrate Judge Jeannice Appenteng |

**DEFENDANT UNCHARTED LABS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2), OR IN THE ALTERNATIVE, TO DISMISS OR STAY PURSUANT TO THE FIRST-FILED DOCTRINE, OR IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Andrew H. Schapiro
Bevin Brennan
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
andrewschapiro@quinnemanuel.com
bevinbrennan@quinnemanuel.com

# TABLE OF CONTENTS

**Page**

BACKGROUND AND FACTS ALLEGED ..................................................................1

    A.    Allegations in This Complaint ..................................................................1

    B.    The *Justice* Litigation in S.D.N.Y. ............................................................2

    C.    Jurisdictional Facts Relating to Udio ......................................................3

ARGUMENT ............................................................................................................4

I.    This Case Should Be Dismissed For Lack of Personal Jurisdiction. ....................4

    A.    Udio Is Not Subject to General Jurisdiction in Illinois. ...........................4

    B.    Udio Is Not Subject to Specific Personal Jurisdiction in Illinois. ............5

II.    Alternatively, The First-to-File Doctrine Applies to Stay or Dismiss the Case ..................7

III.    Alternatively, This Case Should Be Transferred to New York. ......................10

    A.    The Southern District of New York Is the Proper Forum. .....................10

    B.    The Convenience of the Parties and Witnesses Favor Transfer. ............11

    C.    The Interest of Justice Favors Transfer to S.D.N.Y. ..............................14

CONCLUSION ......................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ................................................................................6

*Art Akiane LLC v. Mardel, Inc.*,
2021 WL 3269837 (N.D. Ill. July 30, 2021).........................................................6

*Askin v. Quaker Oats Co.*,
2012 WL 517491 (N.D. Ill. Feb. 15, 2012) ..........................................................7

*Asset Allocation & Mgmt. Co. v. W. Emp'rs Ins. Co.*,
892 F.2d 566 (7th Cir. 1989) ................................................................................7

*B.D. v. Samsung SDI Co., Ltd.*,
143 F.4th 757 (7th Cir. 2025) ..........................................................................4, 5

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ............................................................................5, 6

*Bureau of Consumer Fin. Prot. v. Fifth Third Bank, NA.*,
2021 WL 534658 (N.D. Ill. Feb. 12, 2021) ......................................11, 12, 13, 14

*In re Extended Stay Hotel Antitrust Litig.*,
2024 WL 5089159 (N.D. Ill. Dec. 12, 2024)..........................................13, 14, 15

*George & Co. LLC v. Target Corp.*,
2021 WL 2948910 (N.D. Ill. July 14, 2021).........................................12, 13, 14, 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..........................................................................................4, 5

*Hussein v. Adidas America, Inc.*,
2023 WL 8787791 (N.D. Ill. Dec. 19, 2023)...............................................7, 9, 10

*Ill. Comp. Rsch., LLC v. Harpercollins Pub., Inc.*,
2010 WL 4877501 (N.D. Ill. Nov. 22, 2010) .....................................................12

*Illinois v. Hemi Grp. LLC*,
622 F.3d 754 (7th Cir. 2010) ................................................................................6

*Jaramillo v. DineEquity, Inc.*,
664 F. Supp. 2d 908 (N.D. Ill. Oct. 9, 2009) .....................................................11

*Johnson v. Ford Motor Co.*,
  2024 WL 1328829 (N.D. Ill. Mar. 28, 2024) ..................................................10

*Lynn Scott, LLC v. Grubhub, Inc.*,
  2021 WL 1088304 (N.D. Ill. Mar. 22, 2021) .....................................................9

*Matlin v. Spin Master Corp.*,
  921 F.3d 701 (7th Cir. 2019) .........................................................................4, 5

*McReynolds v. Merrill Lynch Co., Inc.*,
  694 F.3d 873 (7th Cir. 2012) .......................................................................7, 8, 9

*Mogan v. Met. News Co.*,
  2025 WL 3158202 (N.D. Ill. Nov. 12, 2025) ..................................................5, 6

*Mohammed v. Uber Techs., Inc.*,
  237 F. Supp. 3d 719 (N.D. Ill. 2017) .................................................................4

*Nicholson v. Nationstar Mortg. LLC of Del.*,
  2018 WL 3344408 (N.D. Ill. July 6, 2018) ...............................................7, 8, 9, 10

*Pfizer Inc. v. Apotex Inc.*,
  640 F. Supp. 2d 1006 (N.D. Ill. 2009) ...............................................................9

*Ridge Gold Std. Liquors v. Joseph E. Seagram & Sons, Inc.*,
  572 F. Supp. 1210 (N.D. Ill. 1983) ....................................................................7

*Rosen v. Spirit Airlines, Inc.*,
  152 F. Supp. 3d 1055 (N.D. Ill. 2015) ...........................................................10, 15

*Serlin v. Arthur Andersen & Co.*,
  3 F.3d 221 (7th Cir. 1993) ................................................................................7

*In re Sheehan*,
  48 F.4th 513 (7th Cir. 2022) .............................................................................6

*Shenzen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*
  2024 WL 2845974 (N.D. Ill. June 5, 2024) .......................................................13

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
  27 F. Supp. 3d 883 (N.D. Ill. 2014) ...................................................................6

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
  46 F.3d 624 (7th Cir. 1995) ..............................................................................7

*Walden v. Fiore*,
  571 U.S. 277 (2014) ......................................................................................5, 6

*Warshawsky & Co. v. Arcata Nat'l Corp.*,
    552 F.2d 1257 (7th Cir. 1977) ........................................................................7

*Willis v. Caterpillar Inc.*,
    199 F.3d 902 (7th Cir. 1999) ......................................................................11

**Statutes**

17 U.S.C. § 101 *et seq.*..............................................................................2, 3

17 U.S.C. § 1202(b) ....................................................................................2, 3

28 U.S.C. § 1391(b) ......................................................................................11

28 U.S.C. § 1400(a) ..................................................................................10, 11

28 U.S.C. § 1404(a) ......................................................................1, 10, 14, 15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ..................................................1, 6

Defendant Uncharted Labs, Inc. d/b/a Udio ("Udio") moves to dismiss, or in the alternative stay or transfer, this lawsuit on three grounds:

(1)    This Court lacks personal jurisdiction over Udio, a Delaware corporation with its main operations in New York, and no employees or operations in Illinois; the case should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2);

(2)    In the alternative, the case should be dismissed or stayed pursuant to the first-to-file doctrine based on preexisting litigation, *Justice v. Udio*, No. 1-25-cv-5026 (S.D.N.Y.) ("*Justice*"), involving substantially duplicative claims and parties; and

(3)    In the alternative, this case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), as that is, *inter alia*, convenient for the key witnesses and evidence and the location of an overlapping case based on substantially similar allegations.

## BACKGROUND AND FACTS ALLEGED

### A.    Allegations in This Complaint

Plaintiffs filed this lawsuit on October 15, 2025.  They describe themselves as "independent musicians and songwriters" whose claims "challenge[ ] Udio's practice of systematically copying and storing works by independent artists to fuel a commercial, mass-market music generation engine."  (Compl. ¶¶ 1-2.)  There are ten plaintiffs—eight of whom are based in Illinois, one of whom is based in Georgia, and one of whom is based in California.  (Compl. ¶¶ 14-40.)

Udio is an AI music generation service that allows users to select parameters to create unique audio files.  (Compl. ¶¶ 49-50.)  Plaintiffs allege, "[b]ased upon information and belief," that in creating training its model, "Udio copied and used a number of the copyrighted recordings without permission."  (Compl. ¶ 61; *see also id.* ¶¶ 4-6 and ¶¶ 49-105 (similar allegations of wrongful conduct).)  Plaintiffs do not allege that any "outputs" of Udio's product—*i.e.* any audio

1

files generated at the request of the user—"match a single work," but rather allege "reproduction, ingestion and use of specific copyrighted recordings and compositions during pre-training, training and fine-tuning, as well as from its collection and retention of a centralized library of pirated or otherwise unauthorized copies beyond any technical need." (Compl. ¶ 6.)

The Complaint alleges 14 counts: (i) seven counts of alleged copyright infringement pursuant to 17 U.S.C. § 101 *et seq.* (Counts I-V, IX-X)); (ii) three counts for violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b) (Counts VI-VIII)); and (iii) four counts for violations of Illinois' Biometric Information Privacy Act, Right of Publicity Act and Uniform Deceptive Trade Practices Act, and unjust enrichment (Counts XI-XIV).

Plaintiffs assert that they are "bring[ing] this action … on behalf of themselves and all other similarly situated independent artists." (Compl. ¶ 113.) Plaintiffs then list 12 classes and subclasses. (*Id.* ¶¶ 113(a)-(l).) While phrased slightly differently, each proposed class is based on allegations that Udio wrongfully copied, ingested, exploited or somehow used in its generative AI model works or identifying information belonging to Plaintiffs and the proposed class. (*Id.*) For each class, Plaintiffs ask this Court to exclude "the named plaintiffs in the lawsuit against Udio (Case No. 1:25-cv-5026, U.S. District Court, S.D.N.Y.)." (Compl. ¶ 113(m).) This is the *Justice* case. Notably, Plaintiffs do not seek to exclude the overlapping class members in the classes.

Plaintiffs seek various forms of relief, including injunctive relief on a classwide basis requiring Udio to cease any infringing or unlawful activity using the identities or works of any class member, the destruction of any models using class works, statutory damages, declaratory judgments, an accounting and disgorgement, and attorneys' fees. (Compl. ¶ 290(a)-(bb).)

**B.     The *Justice* Litigation in S.D.N.Y.**

On June 18, 2025, Anthony Justice and two other plaintiffs filed a lawsuit in the Southern

2

District of New York. (*See* Ex. A.) On October 27, 2025, the *Justice* plaintiffs filed an Amended Complaint. (*See* Ex. B ("Justice Compl.").) The *Justice* plaintiffs allege that Udio's "AI music generator is trained using 'publicly available' sources" which, allegedly are "majority owned and controlled by Independent artists such as Plaintiffs, Class Members, and Subclass Members." (*Id.* ¶ 5.) They further allege, *inter alia*, that "Udio train[s] its AI model on the songs of Plaintiffs, Class Members and Subclass Members without authorization, to then create competing music in the exact same marketplace, ..." (*id.* ¶ 25), and that "Udio copied Plaintiffs', Class Members', and Subclass Members' songs from, located on the open internet," and "trained its AI model on the songs belonging to Plaintiffs, Class Members, and Subclass Members." (*Id.* ¶¶ 69-70.)

The *Justice* plaintiffs brought four counts against Udio: (i) two counts based on alleged violations of the Copyright Act; (ii) one count based on the DMCA; and (iv) one count based on the Tennessee Consumer Protection Act. The *Justice* plaintiffs filed their claims as a putative class action. (*Justice* Compl. ¶ 353.) The *Justice* plaintiffs seek classwide injunctive relief requiring Udio to cease any infringing or unlawful activity relating to the works of any class member, the purging or destruction of any models using class works, statutory damages, declaratory judgments, equitable restitution and disgorgement, and attorneys' fees. (*Id.* at 62-64.)

## C.      Jurisdictional Facts Relating to Udio

Udio is a Delaware Corporation with its principal place of business in New York. (Compl. ¶ 41.) Udio is not registered to do business in Illinois, has no employees located in Illinois, and has no business operations in Illinois. (Ex. C, Declaration of Andrew Sanchez ("Sanchez Decl.") ¶ 5.) Udio does not direct any specific advertising or marketing to or engage in geotargeting of Illinois users. (*Id.* ¶¶ 6-7.) Udio's model has no particular product features directed solely to Illinois users. (*Id.* ¶ 8.) Many documents or other evidence relevant to the litigation would be

retrieved by employees located in New York. (*Id.* at ¶ 11.) All of Udio's principal witnesses are located in or near New York. (*Id.* ¶ 12.) Plaintiffs nevertheless contend that this Court has personal jurisdiction over Udio because it allegedly "regularly conducts business" in and "has purposefully directed its infringing activities into the State of Illinois," thereby "harming Plaintiffs residing or conducting business here." (Compl. ¶ 45.)

## ARGUMENT

### I.      This Case Should Be Dismissed For Lack of Personal Jurisdiction.

Plaintiffs must make a *prima facie* showing of jurisdictional facts, and the court may examine additional evidence in making this determination. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Plaintiffs must plead facts alleging that the exercise of jurisdiction is consistent with federal due process principles and the Illinois long-arm statute, which allows for the exercise of jurisdiction if doing so comports with federal due process. *Id.* This Court has neither general jurisdiction nor specific jurisdiction over Udio.

### A.      Udio Is Not Subject to General Jurisdiction in Illinois.

This Court does not have general jurisdiction over Udio. Plaintiffs make a conclusory allegation that Udio "regularly conducts business" in Illinois, which presumably is an allegation of general jurisdiction. (Compl. ¶ 45.) Conclusory allegations of personal jurisdiction are insufficient. *See, e.g., Mohammed v. Uber Techs., Inc.,* 237 F. Supp. 3d 719, 735 (N.D. Ill. 2017) ("conclusory, vague allegations" are insufficient to establish personal jurisdiction). Udio is not "at home" in Illinois, which is where a corporate defendant is incorporated and "the state where it principally conducts its business." *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011); *B.D. v. Samsung SDI Co., Ltd.,* 143 F.4th 757, 765 (7th Cir. 2025). Udio is incorporated in Delaware with its principal place of business in New York. (Compl. ¶ 41;

4

Ex. C, Sanchez Decl. ¶ 4.)  There is no factual basis to support that Udio's contacts with Illinois are "so continuous and systematic as to render [it] essentially at home" there.  *B.D.*, 143 F.4th at 765 (alteration in original) (quoting *Goodyear*, 564 U.S. at 919).  To the extent that Plaintiffs allege that Udio's website establishes general jurisdiction, "[t]his argument is foreclosed by the Seventh Circuit."  *Mogan v. Met. News Co.*, 2025 WL 3158202, at *3 (N.D. Ill. Nov. 12, 2025) (rejecting theory that "interactive" website that "can be accessed from anywhere" subjected the defendant to general jurisdiction in Illinois).  Accordingly, Udio is not subject to general jurisdiction in Illinois.

**B.      Udio Is Not Subject to Specific Personal Jurisdiction in Illinois.**

Plaintiffs also fail to make a *prima facie* case of specific personal jurisdiction.  To establish specific personal jurisdiction, a defendant must have sufficient "minimum contacts" with the forum state and the plaintiff's claims must "arise out of" or are related to those contacts.  *Walden v. Fiore,* 571 U.S. 277, 283-85 (2014).  Plaintiffs must establish that Udio "has purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in" Illinois, and that "the alleged injury arises out of [Udio's] forum-related activities."  *Matlin*, 921 F.3d at 706 (citation omitted).  "Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market."  *be2 LLC v. Ivanov,* 642 F.3d 555, 558-59 (7th Cir. 2011) (emphasis original).

Plaintiffs assert that this Court can exercise personal jurisdiction over Udio because Udio allegedly "has purposefully directed its infringing activities into the State of Illinois and this judicial district, including by collecting, processing, and commercially exploiting Illinois residents' voiceprints and distinctive vocal identifiers through Udio's AI systems, harming Plaintiffs residing or conducting business here."  (Compl. ¶ 45.)  But these general, conclusory statements do not suffice.  Plaintiffs do not allege that Udio targeted the Illinois market in any

way; rather, Udio simply offered a product on the internet. (Ex. C, Sanchez Decl. ¶ 9.) Udio did not engage in any advertising, marketing or geotargeting of Illinois users separate and apart from any other users. (*Id.* ¶¶ 6-7.) Illinois users were not offered any unique product features. (*Id.* ¶ 8.)

"If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2,* 642 F.3d at 559; *see also Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (stating interactivity of a website is a "poor proxy for adequate in-state contacts"); *Illinois v. Hemi Grp. LLC,* 622 F.3d 754, 760 (7th Cir. 2010) (holding that a defendant should not be "haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive'"); *Telemedicine Sols. LLC v. WoundRight Techs., LLC,* 27 F. Supp. 3d 883, 900-901 (N.D. Ill. 2014) (holding no personal jurisdiction where internet offering was not "targeted or aimed at Illinois" and at most "prompted … happenstance interactions").

Plaintiffs also claim that Udio's conduct "harm[ed] Plaintiffs residing or conducting business here." (Compl. ¶ 45.) But "injury to a forum resident, even if predictable, is not a sufficient connection to the forum" to establish personal jurisdiction over a defendant. *In re Sheehan,* 48 F.4th 513, 524 (7th Cir. 2022) (citing *Walden,* 571 U.S. at 290).

Because Plaintiffs do not allege any facts indicating that Udio "deliberately targeted or exploited the Illinois market," they fail to carry their burden to establish personal jurisdiction in this Court over Udio. *be2,* 642 F.3d at 559; *see also Art Akiane LLC v. Mardel, Inc.,* 2021 WL 3269837, at *3 (N.D. Ill. July 30, 2021). Therefore, this action should be dismissed under Rule 12(b)(2) for a lack of personal jurisdiction. *See, e.g., Mogan*, 2025 WL 3158202, at *9 (dismissing case for lack of personal jurisdiction without prejudice to refile in an appropriate forum).

## II.      Alternatively, The First-to-File Doctrine Applies to Stay or Dismiss the Case.

If the Court were to hold that it has personal jurisdiction over Udio, the case should be

dismissed or stayed based on the *Justice* case, pursuant to the first-to-file doctrine.  Courts have

the "'inherent power to administer their dockets …' by avoiding duplicative litigation."  *Askin v.*

*Quaker Oats Co.,* 2012 WL 517491, at *3 (N.D. Ill. Feb. 15, 2012) (quoting *Trippe Mfg. Co. v.*

*Am. Power Conv. Corp.,* 46 F.3d 624, 629 (7th Cir. 1995)).  "The 'first-to-file' doctrine provides

that when identical or nearly identical suits are filed in separate districts, 'the first case should be

allowed to proceed and the second should be abated.'"  *Hussein v. Adidas America, Inc.*, 2023 WL

8787791, at *1 (N.D. Ill. Dec. 19, 2023), quoting *Asset Allocation & Mgmt. Co. v. W. Emp'rs Ins.*

*Co.*, 892 F.2d 566, 573 (7th Cir. 1989).  "The doctrine exists 'to prevent multiplicity of actions

and to achieve resolution in a single lawsuit of all disputes arising out of common matters."  *Id.*,

quoting *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977).   Where

a duplicative action is pending, district courts have broad discretion  to dismiss a complaint.

*McReynolds v. Merrill Lynch Co., Inc.*, 694 F.3d 873, 888-89 (7th Cir. 2012).

"District courts are accorded 'a great deal of latitude and discretion' in determining whether

one action is duplicative of another."  *Nicholson v. Nationstar Mortg. LLC of Del.*, 2018 WL

3344408, at *5 (N.D. Ill. July 6, 2018), quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223

(7th Cir. 1993) and *Ridge Gold Std. Liquors v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210,

1213 (N.D. Ill. 1983).   "Generally, however, 'a suit is duplicative if the claims, parties, and

available relief do not significantly differ between the two actions."  *Id.*, quoting *Serlin*, 3 F. 3d at

223.  "When comparing the similarity of the parties in two putative class actions, the focus of the

substantially similar inquiry is on the putative class members rather than the named plaintiffs

themselves."  *Id.*  "As with the parties comparison, there need not be complete congruence of the

issues among cases to invoke the first-to-file rule:  there only needs to be substantial overlap of

the issues between them for the rule to apply." *Id.* at *7. The presence of different state law claims is not disqualifying; the court looks to the underlying facts, the "gravamen of the allegations," and the relief requested. *Id.* Where the "claims and requested relief are all based on the same core factual allegations, they are sufficiently similar for purposes of the first-to-file rule." *Id.* at *8.

The first-to-file doctrine applies here. The *Justice* case was filed in June 2025, four months before Plaintiffs filed this lawsuit. With respect to the duplication of claims, the two lawsuits contain overlapping copyright, DMCA and related claims based on alleged wrongful conduct in how Udio trained or created its music generating AI model. The existence of state-specific claims and subclasses does not create a substantial difference. *Id.*, at *7. The two cases seek the same types of relief. *See supra* at 2-3. That is sufficient to establish that the cases substantially overlap.

With respect to the similarity of parties, Plaintiffs here and the *Justice* plaintiffs seek to represent putative nationwide classes of independent musicians. (*Compare* Compl. ¶ 113 *with* Ex. B, *Justice* Compl. ¶ 353.) Plaintiffs here expressly exclude the named *Justice* plaintiffs from any putative class, an implicit admission that the classes are duplicative. (Compl. ¶ 113(m).) The Court must look at whether the putative class members, not the named plaintiffs, overlap—which they undoubtedly do. *Nicholson,* 2018 WL 3344408, at *5. And Udio is the defendant in both.

Dismissal is appropriate, as supported by *McReynolds*. 694 F.3d 873. In that case, brokers sued the firm on a classwide basis for alleged racial discrimination. The court dismissed claims on numerous bases, including that certain claims were duplicative of a previously-filed lawsuit asserting the same challenges to the defendant's underlying employment practices. *Id.* at 889. As *McReynolds* recognized in affirming the trial court's decision to dismiss the claims, "allowing a separate suit seeking the same remedy would be redundant." *Id.*

Given the substantial overlap and duplication between this case and the *Justice* case, the

Court should exercise its discretion and dismiss the case, allowing the preexisting *Justice* case to proceed to protect the interests of all parties. *McReynolds*, 694 F.3d at 888-89.

To the extent that the Court is not inclined to dismiss this case outright, it may also stay the case. In the case of competing class actions, rather than "racing to certification in two federal districts," "[t]he presumptive course is to defer [the] case in favor" of the first-filed case. *Hussein*, 2023 WL 8787791, at *1. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Nicholson*, 2018 WL 3344408 at *4 (citation omitted).

Courts consider the following factors when deciding whether to stay a case: whether a stay (i) "will unduly prejudice or tactically disadvantage the non-moving party," (ii) "will simplify the issues in question and streamline the trial," and (iii) "will reduce the burden of the litigation on the parties and on the court." *Id.*, quoting *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). These factors militate in favor of a stay. *See, e.g., Hussein*, 2023 WL 8787791, at *2 (stating that "where there are twin cases racing toward class certification in separate federal districts at the same time, all three factors counsel in favor of a stay").

**First,** there is no undue prejudice or tactical disadvantage to Plaintiffs. "[S]taying the case while another class action addresses many of the same issues at play in [the other action] will not foreclose relief being available to the named" Plaintiffs here, if and when *Justice* "progresses to a point where the stay can be lifted." *Nicholson*, at *9. **Second,** a stay would simplify the litigation in these cases. *Id.* "With duplicative putative class actions, a stay is highly likely to 'dispense with certain issues and provide certain relief that we will not need to revisit here.'" *Hussein*, 2023 WL 8787791, at *2, quoting *Lynn Scott, LLC v. Grubhub, Inc.*, 2021 WL 1088304, at *5 (N.D. Ill. Mar. 22, 2021). A stay would also prevent inconsistent rulings. *Id.* The *Justice* case is likely to,

at a minimum, resolve the legal issues relating to the federal claims. The existence of further proceedings on the Illinois state law claims is not a basis to deny the stay. *Nicholson*, 2018 WL 3344408, at *9. **Third,** "a stay would preserve the resources of the parties and reduce the burden of litigation on the Court." *Id.*; *see also Hussein*, 2023 WL 8787791, at *3 (recognizing that a stay was "likely to lessen the burden" for both parties and allows the Court avoid "duplicative discovery and motion practice … and potentially unnecessary work by the Court"). A decision in *Justice* "may materially reduce the issues to be decided" in this case. *Nicholson*, at *9. Litigating certain issues once, in one forum, is patently the most efficient way.

For these reasons, if the Court does not find that outright dismissal is appropriate, the case should be stayed pending further proceedings in the *Justice* case.

## III. Alternatively, This Case Should Be Transferred to New York.

If the Court were to find that it has personal jurisdiction over Udio and that the claims should not be dismissed or stayed pursuant to the first-to-file doctrine, then, in the alternative, the Court should transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). "[T]he apparent trend among Courts in this District is to grant transfer motions under the key geographic factors present here: the defendant is located in the transferee district, two similar class actions are pending in different federal districts and one of the class actions is pending in the transferee district." *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063 (N.D. Ill. 2015). The Court considers: (1) whether venue is proper in both the transferor and transferee courts; (2) whether the transferee district would be more convenient for the parties and witnesses; and (3) whether a transfer would serve the interest of justice. *See Johnson v. Ford Motor Co.*, 2024 WL 1328829, at *3 (N.D. Ill. Mar. 28, 2024). Each factor weighs in favor of transfer.

### A. The Southern District of New York Is the Proper Forum.

First, venue is proper in the Southern District of New York. 28 U.S.C. § 1400(a) provides

that any civil action "relating copyrights … may be instituted in the district in which the defendant or his agent resides or may be found" – which is the Southern District of New York. The general venue statute, 28 U.S.C. § 1391(b), also provides for venue in the Southern District of New York, because that is the principal place of business of Udio and therefore where Udio resides. *See supra* at 3, 4-5. Venue thus properly lies in the Southern District of New York. *See Willis v. Caterpillar Inc.,* 199 F.3d 902, 905 (7th Cir. 1999) (venue "was clearly proper" in district where the defendant's principal place of business was located). Venue is not proper here under either 28 U.S.C. § 1400(a) or 28 U.S.C. § 1391(b), as it is not where Udio resides nor is it the place "in which a substantial part of the events of the events or omissions giving rise to the claims occurred." *See supra* at 3, 4-5. This factor requires transfer.

**B.       The Convenience of the Parties and Witnesses Favor Transfer.**

Second, in analyzing the convenience of the parties and witnesses, courts examine: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Bureau of Consumer Fin. Prot. v. Fifth Third Bank, NA.,* 2021 WL 534658, at *2 (N.D. Ill. Feb. 12, 2021). Each of these factors weighs in favor transfer.

**1.       Plaintiffs' Choice of Forum Deserves No Deference:** A plaintiff's choice of forum is "greatly discounted in class actions" because the "choice of venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. Oct. 9, 2009). In fact, two of the named Plaintiffs here reside in Georgia and California. (Compl. ¶¶ 33, 38.) Moreover, a plaintiff's forum choice is afforded "less deference ... when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to

the situs of material events." *George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *2 (N.D. Ill. July 14, 2021) (citation omitted). The Southern District of New York has a stronger relationship to this dispute: that is Udio's principal place of business and where all of the alleged wrongful conduct originated. *See supra* at 3. In contrast, Illinois has no significant connection to the material events. *See George*, 2021 WL 2948910, at *3 (where "the alleged infringement occurred in many districts nationwide there should not be significant deference given to this District").

2. **S.D.N.Y. Is the Situs of Material Events:** As discussed above, the Southern District of New York is the situs of material events, as that is "where the defendant's decisions and activities that gave rise to the claim took place." *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *2 ("Where a corporate defendant's conduct is at issue, courts often look to where the underlying business decisions were made."); *George*, 2021 WL 2948910, at *3 ("[T]he material events inquiry focuses on the location of actions creating the injury, not the location of the injury itself."). Courts consider the location of the defendant's principal place of business and where the allegedly infringing product or service was developed, as infringement cases "typically revolve around the alleged infringer's activities, employees, and documents." *Ill. Comp. Rsch., LLC v. Harpercollins Pub., Inc.*, 2010 WL 4877501, at *2-3 (N.D. Ill. Nov. 22, 2010).

Here, Udio's "decisions and activities that gave rise to the claim[s] took place" in New York, not Illinois. *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *2. Plaintiffs' claims, premised on Udio's development, training, and operation of its generative AI models, emanate from New York. (*See, e.g.,* Compl. ¶¶ 4-6; *id.* ¶¶ 49-105; Ex. C. Sanchez Decl. ¶¶ 10, 12.) New York is thus the situs of material events. *See Ill. Comp. Rsch.,* 2010 WL 4877501, at *2-3.

Absent facts showing Udio targeted Illinois, the availability of Udio's service on the internet is not enough. *See George,* 2021 WL 2948910, at *3 ("When products are sold

12

nationwide, the fact that a product is sold in one district does not force the parties to litigate the case there."). And where any Plaintiffs or putative class members were harmed is irrelevant. *See id.* at *3 (focusing on "the location of actions creating the injury, not the location of the injury itself.").

Because this case has virtually no relationship to this district, and all of the material events occurred in the Southern District of New York, the "situs" factor strongly favors transfer.

**3.    The Relative Ease of Access to Proof Supports Transfer:**  The location of documents and evidence favors transfer to the Southern District of New York.  Documents and evidence in Udio's possession regarding its generative AI models are in the Southern District of New York, where Udio has its principal place of business. *See Shenzen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.,* 2024 WL 2845974, at *7 (N.D. Ill. June 5, 2024) (in infringement case, transfer favored because defendant's documents and evidence were likely in defendant's location). Because the vast majority of this evidence is located in New York, this factor favors transfer.

**4.    S.D.N.Y. is More Convenient for the Witnesses:**  The Southern District of New York would be much more convenient for key witnesses.  *See George*, 2021 WL 2948910, at *4. Courts look to "the nature and quality of the witnesses' testimony with respect to the issues of the case." *Bureau of Consumer Fin. Prot.,* 2021 WL 534658, at *3.  With respect to Plaintiffs, in a putative class action, there is no location of particular convenience to Plaintiffs. *See In re Extended Stay,* 2024 WL 5089159, at *4 ("[B]ecause the class of putative plaintiffs are nationwide customers ...  there is no location that is obviously more or less convenient for Plaintiffs.")  Two named Plaintiffs do not even reside in Illinois.  (Compl. ¶¶ 33, 38 (alleging Plaintiffs reside in Georgia and California).)  The Court therefore should look to the convenience of Udio's witnesses.

The primary witnesses with information about the development, training, and operation of Udio's generative AI models are Udio's witnesses.  (Ex. C, Sanchez Decl. ¶ 12.)  None of these

witnesses are located in Illinois, and all reside in or near the Southern District of New York. (*Id.*) *See Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *3 ("When the testimony of senior management will likely be an important part of litigation, courts often find it appropriate to transfer the case to the district where those officers are located."). They will also likely be witnesses in the *Justice* case, and judicial economy and the conservation of party resources weighs against requiring duplicative testimony about substantially similar allegations and claims. *See In re Extended Stay*, 2024 WL 5089159, at *4; *George*, 2021 WL 2948910, at *4 ("To haul witnesses into an Illinois courtroom whose roles are potentially duplicative in the related action ... would contravene the purpose of Section 1404(a).").

5.   **S.D.N.Y. Is More Convenient for the Parties:** The Southern District of New York is substantially more convenient for Udio, particularly given that the *Justice* case there will involve substantially similar witnesses, facts, and legal arguments. *See supra* at 9-10; *In re Extended Stay*, 2024 WL 5089159, at *5 ("the inconvenience of litigating the California action while litigating the substantially similar Illinois action" met the burden for transfer). Plaintiffs' convenience is less significant in a putative nationwide class action because "replacement Plaintiffs are likely available in any locale should the burdens of representation prove unbearable for any currently named Plaintiff." *In re Extended Stay*, 2024 WL 5089159, at *4. In sum, the convenience factors favor transfer to the Southern District of New York.

**C.   The Interest of Justice Favors Transfer to S.D.N.Y.**

Third, the interest of justice (the virtue, not the New York plaintiff, although perhaps his interest as well) favors transferring this case. These factors include: "(1) docket congestion and likelihood to proceed to a speedy trial, (2) each court's relative familiarity with the relevant law, (3) the respective desirability of resolving controversies in each locale, and (4) the relationship of

each community to the controversy." *George*, 2021 WL 2948910, at *5. Courts also "consider[] the judiciary's interest in trying related litigation together." *In re Extended Stay*, 2024 WL 5089159, at *5. Each of these five factors militate in transferring this case.

***First,*** docket congestion and the likelihood to proceed to a speedy trial favor transfer. The current median time from filing to disposition in civil cases is 1.5 months faster (5.6 months versus 7.1 months) and to trial is almost two years faster (34.2 months versus 56.4 months) in the Southern District of New York than in this Court. (Ex. D, Excerpts from *U.S. District Court-Judicial Caseload Profile* (June 30, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf.). *See George*, 2021 WL 2948910, at *5. ***Second,*** the Southern District of New York is ahead in being familiar with the issues. *Justice* has already proceeded to an amended complaint and a Rule 12(b)(6) motion to dismiss. ***Third,*** these issues should be resolved in one locale. The same considerations raised by the first-to-file doctrine (judicial economy, efficiency in discovery, and the like) weigh in favor of transfer. *See Rosen*, 152 F. Supp. 3d at 1063-65; *In re Extended Stay*, 2024 WL 5089159, at *6. ***Fourth,*** New York has a greater relationship to the controversy: it is Udio's principal place of business and where the main witnesses are located in or near. Udio's conduct there is primarily at issue. ***Fifth,*** the judiciary has an interest in trying related litigation together. Udio's conduct is at issue in both cases, the putative classes are nearly identical, and there is no reason to try these two cases separately.

For these reasons, in the final alternative, this case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

Udio respectfully requests that the Court dismiss or stay this case or, in the alternative, transfer the case to the Southern District of New York.

Dated:  December 18, 2025

Respectfully submitted,
UNCHARTED LABS, INC.,

*/s/ Andrew H. Schapiro*

Andrew H. Schapiro
Bevin Brennan
QUINN EMANUEL URQUHART &
SULLIVAN,  LLP
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 705-7400
andrewschapiro@quinnemanuel.com
bevinbrennan@quinnemanuel.com

*Attorneys for Defendant Uncharted Labs, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 18, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro