**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID WOULARD, ATTACK THE
SOUND LLC, an Illinois limited liability
company, STAN BURJEK, JAMES
BURJEK, BERK ERGOZ, HAMZA JILANI,
MAATKARA WILSON, ARJUN SINGH,
MAGNUS FIENNES, and MICHAEL
MELL, each individually and on behalf of all
others similarly situated,

           Plaintiffs,

v.

UNCHARTED LABS, INC. d/b/a Udio.com
and UNKNOWN DEFENDANTS,

           Defendants.

Case No.: 25-cv-12613

District Judge Sara Ellis

Magistrate Judge Jeannice Appenteng

**DEFENDANT UNCHARTED LABS, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT
TO FED. R. CIV. P. 12(b)(2), OR IN THE ALTERNATIVE, TO DISMISS OR STAY
PURSUANT TO THE FIRST-FILED DOCTRINE, OR IN THE ALTERNATIVE, TO
<u>TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)</u>**

Andrew H. Schapiro
Bevin Brennan
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 705-7400
andrewschapiro@quinnemanuel.com
bevinbrennan@quinnemanuel.com

*Attorneys for Defendant Uncharted Labs, Inc.*

**TABLE OF CONTENTS**

**Page**

BACKGROUND AND FACTS ALLEGED.................................................................................1

    A.    Allegations in the First Amended Complaint ...........................................................1

    B.    The *Justice* Litigation in S.D.N.Y. .......................................................................3

    C.    Jurisdictional Facts Relating to Udio.......................................................................3

ARGUMENT ...........................................................................................................................4

I.    This Case Should Be Dismissed for Lack of Personal Jurisdiction.................................4

    A.    Udio Is Not Subject to General Personal Jurisdiction in Illinois. .......................4

    B.    Udio Is Not Subject to Specific Personal Jurisdiction in Illinois. ......................5

        1.    Udio's Website and Mobile Application. (FAC ¶¶ 45(a1)-(a7), (a12)-(a14), (a16)-(a17), (a24)-(a25), (a27).)............................................6

        2.    Illinois Users Being Able to Pay for or Subscribe to Udio's Service. (FAC ¶¶ 45(a8)-(a11), (a18)-(a19), (a22), (a25), (a29), (a32), (a34), a(59).)..................................................................................................8

        3.    Subsequent Actions by Illinois Users on Third-Party Sites. (FAC ¶¶ 45(a15), (a35), (a49), (a58).)...........................................................9

        4.    Any Ability to Obtain Aggregate Data on Users by State. (FAC ¶¶ 45(a20)-(a23), (a28), (a41), (a47), (a50)-(a53), (a56).) ..............10

        5.    Having Customer Support in Another State that Illinois Residents May Call. (FAC ¶¶ 45(a26), (a53).).........................................................10

        6.    A Company's Nationwide Growth and Advertising. (FAC ¶¶ 45(a29)-(a30), (a54)-(a55).) .......................................................11

        7.    Plaintiffs' Residence and Claims. (FAC ¶¶ 45(a31), (a33), (a36)-(a38).)..................................................................................................11

        8.    No Illinois-Specific Restrictions or Fraud Prevention Methods. (FAC ¶¶ 45(a39)-(a40).) ...........................................................................13

        9.    The Location of Third-Party Web-Traffic Routers and Infrastructure. (FAC ¶¶ 45(a42)-(a46), (a48), (a57).) ..............................13

II.    Alternatively, The First-to-File Doctrine Applies to Stay or Dismiss the Case............15

III.    Alternatively, This Case Should Be Transferred to New York. ....................................18

    A.    The Southern District of New York Is the Proper Forum....................................19

    B.    The Convenience of the Parties and Witnesses Favor Transfer. .........................19

        1.    Plaintiffs' Choice of Forum Deserves No Deference: ..............................19

        2 .    S.D.N.Y. Is the Situs of Material Events: ................................................20

        3.    The Relative Ease of Access to Proof Supports Transfer:........................21

i

4. S.D.N.Y. is More Convenient for the Witnesses: ......................................21

5. S.D.N.Y. Is More Convenient for the Parties:.............................................22

C. The Interest of Justice Favors Transfer to S.D.N.Y...........................................23

CONCLUSION.....................................................................................................................24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...................................................................5, 7, 8, 13

*Art Akiane LLC v. Mardel, Inc.*,
2021 WL 3269837 (N.D. Ill. July 30, 2021)...................................................................8

*Askin v. Quaker Oats Co.*,
2012 WL 517491 (N.D. Ill. Feb. 15, 2012) ...................................................................15

*Asset Allocation & Mgmt. Co. v. W. Emp'rs Ins. Co.*,
892 F.2d 566 (7th Cir. 1989) ...................................................................15

*B.D. v. Samsung SDI Co., Ltd.*,
143 F.4th 757 (7th Cir. 2025) ...................................................................4, 5

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ...................................................................5, 7, 8

*Bureau of Consumer Fin. Prot. v. Fifth Third Bank, NA.*,
2021 WL 534658 (N.D. Ill. Feb. 12, 2021) ...................................................................19, 20, 21, 22

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...................................................................4, 5, 10

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
807 F. Supp. 2d 732 (N.D. Ill. 2011) ...................................................................11

*In re Extended Stay Hotel Antitrust Litig.*,
2024 WL 5089159 (N.D. Ill. Dec. 12, 2014) ...................................................................21, 22, 23

*Freeman v. 3Commas Techs. OU*,
2024 WL 1880147 (N.D. Cal. Mar. 25, 2024)...................................................................14

*George & Co. LLC v. Target Corp.*,
2021 WL 2948910 (N.D. Ill. July 14, 2021)...................................................................20, 21, 22, 23

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
564 U.S. 915 (2011)...................................................................5

*Greenspan v. MasMarques*,
2024 WL 1258062 (D. Mass. Mar. 25, 2024)...................................................................14

*Gullen v. Facebook.com, Inc.*,
2016 WL 245910 (N.D. Ill. Jan. 21, 2016)...................................................................12

iii

*Hanson v. Denckla*,
   357 U.S. 235 (1958)............................................................................................9

*Hungerstation LLC v. Fast Choice LLC*,
   2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ...........................................................14

*Hussein v. Adidas America, Inc.*,
   2023 WL 8787791 (N.D. Ill. Dec. 19, 2023)..............................................15, 17, 18

*Ill. v. Hemi Grp. LLC*,
   622 F.3d 754 (7th Cir. 2010) ...............................................................................7

*Ill. Comp. Rsch., LLC v. Harpercollins Pub., Inc.*,
   2010 WL 4877501 (N.D. Ill. Nov. 22, 2010) .....................................................20, 21

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).............................................................................................4

*Jaramillo v. DineEquity, Inc.*,
   664 F. Supp. 2d 908 (N.D. Ill. Oct. 9, 2009) .........................................................20

*Johnson v. Ford Motor Co.*,
   2024 WL 1328829 (N.D. Ill. Mar. 28, 2024)...........................................................19

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*,
   938 F.3d 874 (7th Cir. 2019) ................................................................................5

*Lynn Scott, LLC v. Grubhub, Inc.*,
   2021 WL 1088304 (N.D. Ill. Mar. 22, 2021)...........................................................18

*Matlin v. Spin Master Corp.*,
   921 F.3d 701 (7th Cir. 2019) .....................................................................4, 7, 14

*McReynolds v. Merrill Lynch Co., Inc.*,
   694 F.3d 873 (7th Cir. 2012) ...................................................................15, 16, 17

*Nicholson v. Nationstar Mortg. LLC of Del.*,
   2018 WL 3344408 (N.D. Ill. July 6, 2018)........................................15, 16, 17, 18

*Pfizer Inc. v. Apotex Inc.*,
   640 F. Supp. 2d 1006 (N.D. Ill. 2009) ..................................................................17

*Prevail Legal, Inc. v. Gordon*,
   2021 WL 1947578 (N.D. Cal. May 14, 2021) .........................................................14

*Ridge Gold Std. Liquors v. Joseph E. Seagram & Sons, Inc.*,
   572 F. Supp. 1210 (N.D. Ill. 1983) .......................................................................15

iv

*Rogers v. City of Hobart, Indiana*,
   996 F.3d 812 (7th Cir. 2021) ...............................................................................13

*Rosen v. Spirit Airlines, Inc.*,
   152 F. Supp. 3d 1055 (N.D. Ill. 2015) ...........................................................18, 23

*Schoeps v. Sompo Holdings, Inc.*,
   736 F. Supp. 3d 582 (N.D. Ill. 2024),
   *aff'd on other grounds*, 160 F.4th 815 (7th Cir. 2025) ...........................................11

*Serlin v. Arthur Andersen & Co.*,
   3 F.3d 221 (7th Cir. 1993) ...........................................................................15, 16

*In re Sheehan*,
   48 F.4th 513 (7th Cir. 2022) ........................................................................11, 12

*Shenzen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*,
   2024 WL 2845974 (N.D. Ill. June 5, 2024) ..........................................................21

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
   27 F. Supp. 3d 883 (N.D. Ill. 2014) .................................................................7, 8

*Triple Up Ltd. v. Youku Tudou Inc.*,
   235 F. Supp. 3d 15 (D.D.C 2017) .........................................................................7

*Trippe Mfg. Co. v. Am. Power Conv. Corp.*,
   46 F.3d 624 (7th Cir. 1995) ...............................................................................15

*United Airlines, Inc. v. Zaman*,
   152 F. Supp. 3d 1041 (N.D. Ill. 2015) ..................................................................9

*Walden v. Fiore*,
   571 U.S. 277 (2014)......................................................................5, 10, 12, 14

*Warshawsky & Co. v. Arcata Nat'l Corp.*,
   552 F.2d 1257 (7th Cir. 1977) ............................................................................15

*Willis v. Caterpillar Inc.*,
   199 F.3d 902 (7th Cir. 1999) ..............................................................................19

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980).............................................................................................9

## Statutes

28 U.S.C. § 1391(b) .............................................................................................19

28 U.S.C. § 1400(a) ..............................................................................................19

28 U.S.C. § 1404(a) .......................................................................................................1, 18, 24

**Rules/Other Authorities**

*U.S. District Court-Judicial Caseload Profile* (June 30, 2025),
   https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile063
   0.2025.pdf .................................................................................................................23

At the outset of this case, Plaintiffs filed a complaint that offered no valid basis for the exercise of personal jurisdiction over Defendant Uncharted Labs, Inc. d/b/a Udio ("Udio"), a Delaware corporation with its main operations in New York, and no employees or operations in Illinois. Now, having considered Udio's original motion to dismiss, Plaintiffs have come back with an amended complaint that seemingly throws everything at the jurisdictional wall in hope that something might stick. But it fares no better. If anything, the amended complaint highlights the absence of personal jurisdiction, as it alleges, over and over in a dizzying array of forms, conduct and activity that applies generally across the United States, with no particular connection or attention to Illinois. That will not suffice. The complaint should be dismissed for lack of personal jurisdiction. In the alternative, the case should be dismissed or stayed pursuant to the first-to-file doctrine based on preexisting litigation, *Justice v. Udio*, No. 1-25-cv-5026 (S.D.N.Y.) ("*Justice*"), involving substantially duplicative claims and parties; or should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), as that is, *inter alia*, convenient for the key witnesses and evidence and the location of the overlapping case based on substantially similar allegations.

## BACKGROUND AND FACTS ALLEGED

### A. Allegations in the First Amended Complaint

Plaintiffs brought this lawsuit on October 15, 2025, and filed a First Amended Complaint ("FAC") on January 8, 2026. The FAC alleges 14 counts: (i) seven counts of copyright infringement pursuant to 17 U.S.C. § 101 *et seq.* (Counts I-V, IX-X); (ii) three counts for violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b) (Counts VI-VIII); (iii) claims for violations of Illinois' Biometric Information Privacy Act, Right of Publicity Act and Uniform Deceptive Trade Practices Act (Counts XI-XIII); and (iv) a claim of unjust enrichment (Count XIV).

1

Udio is an AI music generation service that allows users to select parameters to create unique audio files. (FAC ¶¶ 49-50.) There are ten Plaintiffs. Eight are based in Illinois, one in Georgia, and one in California. (*Id.* ¶¶ 14-40.) They describe themselves as "independent musicians and songwriters." (FAC ¶ 1.) Plaintiffs allege, "[b]ased on information and belief," that in creating its product, "Udio copied and used a significant number of [their] copyrighted recordings without permission." (*Id.* ¶ 61; *see also id.* ¶¶ 4-6 and ¶¶ 49-105 (similar allegations).) Plaintiffs do not allege that any "outputs" of Udio's product—*i.e.*, any audio files generated at the request of the user—"match a single work," but rather assert infringement based on Udio's alleged "reproduction, ingestion and use of specific copyrighted recordings and compositions during pre-training, training and fine-tuning, as well as from its collection and retention of a centralized library of pirated or otherwise unauthorized copies beyond any technical need." (*Id.* ¶ 6.)

Plaintiffs purport to "bring this action … on behalf of themselves and all other similarly situated independent artists," and propose a universe of 12 classes and subclasses. (FAC ¶¶ 113, 113(a)-(l).) While phrased slightly differently, each proposed class is based on allegations that Udio wrongfully copied, ingested, exploited or somehow used in its generative AI model works or identifying information belonging to Plaintiffs and the proposed class. (*Id.*) For each class, Plaintiffs ask this Court to exclude the named plaintiffs from the strikingly similar *Justice v. Udio* lawsuit currently pending the Southern District of New York (Case No. 1:25-cv-5026)—but make no similar request regarding overlapping class members from the two cases. (*Id.* ¶¶ 113, 113(m).)

Plaintiffs seek various forms of relief, including injunctive relief on a classwide basis requiring Udio to cease any infringing or unlawful activity using the identities or works of any class member, the destruction of any models using class works, statutory damages, declaratory judgments, an accounting and disgorgement, and attorneys' fees. (FAC ¶¶ 290(a)-(bb).)

2

### B.     The *Justice* Litigation in S.D.N.Y.

On June 18, 2025, Anthony Justice and two other plaintiffs filed a putative class action in the Southern District of New York (*see* Ex. A), followed by an October 27, 2025, Amended Complaint.  (*See* Ex. B ("Justice Compl.").)  The *Justice* plaintiffs allege that Udio's "AI music generator is trained using 'publicly available' sources" which, allegedly are "majority owned and controlled by Independent artists such as Plaintiffs, Class Members, and Subclass Members." (*Id.* ¶ 5.)  They further allege, *inter alia*, that "Udio train[s] its AI model on the songs of Plaintiffs, Class Members and Subclass Members without authorization, to then create competing music in the exact same marketplace" (*id.* ¶ 25), and that "Udio copied Plaintiffs', Class Members', and Subclass Members' songs from [sic] located on the open internet," and "trained its AI model on the songs belonging to Plaintiffs, Class Members, and Subclass Members."  (*Id.* ¶¶ 69-70.)

The *Justice* suit alleges four counts against Udio: (i) two counts based on alleged violations of the Copyright Act; (ii) one count based on the DMCA; and (iii) one count based on the Tennessee Consumer Protection Act.  The *Justice* plaintiffs seek classwide injunctive relief requiring Udio to cease any infringing or unlawful activity relating to the works of any class member, the purging or destruction of any models using class works, statutory damages, declaratory judgments, equitable restitution and disgorgement, and attorneys' fees.  (*Id.* at 62-64.)

### C.     Jurisdictional Facts Relating to Udio

Udio is a Delaware Corporation with its principal place of business in New York. (FAC ¶ 41.)  Udio is not registered to do business in Illinois, has no employees located in Illinois, and has no business operations in Illinois.  (Ex. C, Declaration of Andrew Sanchez ("Sanchez Decl.") ¶ 5.)  Udio does not direct any advertising or marketing to or engage in geotargeting of Illinois users.  (*Id.* ¶¶ 6-7.)  Udio's model has no particular product features directed solely to Illinois users.  (*Id.* ¶ 8.)  Many documents or other evidence relevant to the litigation would be

3

retrieved by employees located in New York. (*Id.* ¶ 11.) All of Udio's principal witnesses are located in or near New York. (*Id.* ¶ 12.) Plaintiffs nevertheless contend (in 64 subparagraphs of allegations) that this Court has specific personal jurisdiction over Udio because it allegedly "deliberately and continuously exploited the Illinois market" and "has purposefully directed suit-related conduct into Illinois." (FAC ¶ 45.)

## ARGUMENT

### I.      This Case Should Be Dismissed for Lack of Personal Jurisdiction.

Plaintiffs must make a *prima facie* showing of jurisdictional facts, and the Court may examine additional evidence in making its jurisdiction determination. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). To establish jurisdiction, Plaintiffs must plead facts alleging that the exercise of jurisdiction is consistent with federal due process principles and the Illinois long-arm statute, which allows for the exercise of jurisdiction if doing so comports with federal due process. *Id.* The key question is whether Udio had sufficient "minimum contacts" with Illinois such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Stated differently, Plaintiffs must show that Udio purposely established minimum contacts with Illinois such that it "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quotation marks omitted). Plaintiffs fail to plead facts sufficient to show that jurisdiction is appropriate here.

### A.      Udio Is Not Subject to General Personal Jurisdiction in Illinois.

Plaintiffs do not allege that Udio is subject to general personal jurisdiction in Illinois, nor could they. A corporate defendant is at home, and subject to general personal jurisdiction, in the state where it is incorporated and in "the state where it principally conducts its business." *B.D. v. Samsung SDI Co., Ltd.*, 143 F.4th 757, 765 (7th Cir. 2025). Udio is incorporated in Delaware

4

with its principal place of business in New York. (FAC ¶ 41; Ex. C, Sanchez Decl. ¶ 4.) Nor does Udio have contacts with Illinois that are "so continuous and systematic as to render [it] essentially at home" here. *B.D.*, 143 F.4th at 765 (alteration in original) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Accordingly, Udio is not subject to general jurisdiction in Illinois.

### B. Udio Is Not Subject to Specific Personal Jurisdiction in Illinois.

Specific personal jurisdiction is equally lacking. A court may only exercise specific personal jurisdiction over a defendant that has sufficient "minimum contacts" with a forum such that the defendant has "a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The jurisdictional "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. A defendant may be haled into court only "based on [its] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King*, 471 U.S. at 475). In the online context, "[b]eyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." *be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011).

"Crucially, not just any contacts will do"; rather, "the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden*, 571 U.S. at 284) (emphasis added). That is, "the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019).

Plaintiffs attempt to manufacture Udio's alleged Illinois-directed suit-related conduct in a whopping 59 paragraphs. (*Id.* ¶¶ 45(a1)-(a59).) Many of the paragraphs are repetitive and struggle

to find any connection to Illinois. But every single allegation is a general proposition, parsed into dozens of subparagraphs, that does not apply to Illinois more than any other state.

These 59 paragraphs fall into nine categories: (1) Udio's website and mobile app are available to users in Illinois (*id.* ¶¶ 45(a1)-(a7), (a12)-(a14), (a16)-(a17), (a24)-(a25), (a27)); (2) Illinois users may subscribe to or pay for Udio's online services (*id.* ¶¶ 45(a8)-(a11), (a18)-(a29), (a32), (a34), (a37)-(a38), (a59)); (3) Illinois users may choose to use other third-party services to post outputs (*id.* ¶¶ 45(a15), (a35), (a58)); (4) certain user data and metrics for marketing or business development purposes may be available on the state level, including Illinois (*id.* ¶¶ 45(a20)-(a23), (a28), (a36), (a41) (a47), (a50)-(a52), (a56)); (5) Udio's customer support services are available to Illinois users (*id.* ¶¶ 45(a26), (a53)); (6) Udio's nationwide growth and advertising (*id.* ¶¶ 45(a29)-(a30), (a54)-(a55)); (7) some Plaintiffs are Illinois residents (*id.* ¶¶ 45(a31), (a33)); (8) "on information and belief," Udio employs certain restrictions and fraud prevention methods for Illinois users (*id.* ¶¶ 45(a39)-(a40)); and (9) Udio uses Cloudflare and other third-party platforms (*id.* ¶¶ 45(a42)-(a46), (a48)-(a49), (a57)).

Courts have roundly rejected efforts to use these types of allegations to impose what would essentially be nationwide jurisdiction by the mere operation of a website, as discussed below.

### 1. Udio's Website and Mobile Application. (FAC ¶¶ 45(a1)-(a7), (a12)-(a14), (a16)-(a17), (a24)-(a25), (a27).)

The crux of Plaintiffs' allegations is that Udio is subject to jurisdiction in Illinois because Udio makes its "interactive online platform"—its website and mobile application—available to "users throughout the United States, including Illinois." (*See* FAC ¶¶ 45(a1)-(a7), (a12)-(a14), (a16)-(a17), (a24)-(a25), (a27).) Under Plaintiffs' theory of jurisdiction, Udio would be subject to specific personal jurisdiction in every state except where it takes action to restrict that state's residents from accessing its website. (*See id.* ¶ 45(a5).) That is not the law.

Plaintiffs' allegations that Udio allowed Illinois residents to interact with its product on the internet do not establish that Udio "purposefully directed [its] activities at" or "purposefully availed [it]self of the privilege of conducting business" in Illinois. *Matlin*, 921 F.3d at 706. For a defendant to be subject to specific jurisdiction in Illinois, it must have done more than operate a website that is generally available throughout the United States. "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2*, 642 F.3d at 559; *see also Adv. Tactical*, 751 F.3d at 803 (stating that interactivity of a website is a "poor proxy for adequate in-state contacts"); *Ill. v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010) (holding that a defendant should not be "haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive'"); *Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 900-901 (N.D. Ill. 2014) (holding no personal jurisdiction where internet offering was not "targeted or aimed at Illinois" and at most "prompted … happenstance interactions").

Nor is a defendant subject to personal jurisdiction in a state simply because it declines to prevent a state's residents from accessing its website. Such a rule would improperly "replace the purposeful availment standard with a requirement of purposeful avoidance." *Triple Up Ltd. v. Youku Tudou Inc*., 235 F. Supp. 3d 15, 24-26 (D.D.C 2017) (holding that defendant's failure to geoblock its website from a particular location did not constitute purposeful availment, because "[t]o hold otherwise would invite a sea change in the law of internet personal jurisdiction").

Plaintiffs make no allegations that Udio purposefully directed its activities at Illinois users or purposefully availed itself of the privilege of conducting business in Illinois. Udio did not engage in any advertising or marketing that targeted Illinois, did not geotarget Illinois users

separate and apart from any other user, and did not offer any unique product features to users in Illinois. (Ex. C, Sanchez Decl. ¶¶ 6-8.) Udio merely offered users access to its website and mobile application nationwide. (FAC ¶ 45(a1).) Because Plaintiffs do not allege any facts indicating that Udio operated its website or mobile application in ways that "deliberately targeted or exploited the Illinois market," they fail to carry their burden to establish this Court's jurisdiction over Udio on this basis. *be2*, 642 F.3d at 559; *see also Telemedicine Sols.*, 27 F. Supp. 3d at 900-01; *Art Akiane LLC v. Mardel, Inc.*, 2021 WL 3269837, at *3 (N.D. Ill. July 30, 2021).

> **2.      Illinois Users Being Able to Pay for or Subscribe to Udio's Service. (FAC ¶¶ 45(a8)-(a11), (a18)-(a19), (a22), (a25), (a29), (a32), (a34), a(59).)**

The fact that users could interact with Udio's website through "subscription plans (including free and paid tiers)" does not create jurisdiction. (FAC ¶¶ 45(a8)-(a11), (a18)-(a19), (a22), (a32), (a34), (a37)-(a38), a(59).) *See be2*, 642 F.3d at 559 (Illinois residents opening accounts on the defendant's interactive website did not create specific jurisdiction over the defendant where no evidence existed that the defendant had targeted the state). Specific jurisdiction is inappropriate where a defendant allows users from any state to create accounts on its interactive websites; such activity simply "does not show a relation between the company and [the forum state]." *Adv. Tactical*, 751 F.3d at 803. Udio's operation of an interactive website that allows users from across the nation to subscribe does not constitute targeting Illinois merely because some of the website's subscribers happen to reside there.

Moreover, any alleged contacts between Udio and its online subscribers are not suit-related contacts. Plaintiffs are musicians who "bring this action … on behalf of themselves and all other similarly situated independent artists." (FAC ¶ 113.) Plaintiffs are not suing on behalf of Udio's online subscribers, nor do they allege that their claims relate to any particular Illinois subscriber. Rather, Plaintiffs' claims are based on allegations that Udio wrongfully copied, ingested, exploited

or somehow used in its generative AI model works or identifying information belonging to Plaintiffs and the proposed classes. (*Id.* ¶¶ 113(a)-(l).) These claims do not arise out of Udio's alleged contacts with subscribers who happen to reside in Illinois. "[O]nly suit-related contacts and not, for example, defendant's contacts with the plaintiff or third-parties, can create the required connection with the forum state." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1049 (N.D. Ill. 2015).

### 3. Subsequent Actions by Illinois Users on Third-Party Sites. (FAC ¶¶ 45(a15), (a35), (a49), (a58).)

Udio is not subject to jurisdiction simply because it allegedly allowed website users, including those who happen to be in Illinois, "to disseminate or share AI-generated outputs on third-party platforms" such as YouTube, TikTok, Spotify, Instagram Reels, and SoundCloud or allegedly facilitated these actions. (FAC ¶¶ 45(a15), (a35), (a49), (a58).)

Plaintiffs essentially claim that because it was foreseeable that some Illinois users would go on to post allegedly copyright-infringing content on third-party websites, Udio should be subject to jurisdiction in Illinois. But the Supreme Court long ago made clear that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). "[T]he mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *Id.* at 298 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Udio has found no case law subjecting a defendant to personal jurisdiction based on a website user's unilateral decisions to repost or share allegedly copyright-infringing content on third-party social media platforms. Exercising jurisdiction in such a case would be anathema to the bedrock jurisdictional principle that a defendant may be haled into court only "based on [its]

own affiliation with the State," not based on the conduct of parties beyond its control. *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475).

### 4. Any Ability to Obtain Aggregate Data on Users by State. (FAC ¶¶ 45(a20)-(a23), (a28), (a41), (a47), (a50)-(a53), (a56).)

Plaintiffs next allege that Udio collects, processes, and analyzes state-level user telemetry and analytics of all users, including those located in Illinois. (FAC ¶¶ 45(a20)-(a23), (a28), (a41), (a47), (a50)-(a53), (a56).) The technical jargon Plaintiffs deploy belies the ubiquity of these technologies and the fact that almost every modern website and mobile application relies on them. They provide no unique contact or connection with Illinois.

The telemetry and analytics technologies Plaintiffs describe are not bespoke features of Udio's platform. These mechanisms are standard components of website and mobile application operations, used to optimize performance and deliver dynamic online content. (Ex. C, Sanchez Decl. ¶ 7.) They constitute general features of Udio's nationwide-accessible website, not Illinois-directed conduct. Plaintiffs' allegations again fall short of establishing jurisdiction over Udio in Illinois.

### 5. Having Customer Support in Another State that Illinois Residents May Call. (FAC ¶¶ 45(a26), (a53).)

Plaintiffs allege that "Udio provides customer support to users in Illinois and maintains support records reflecting recurring interactions with Illinois customers." (FAC ¶¶ 45 (a26), (a53).) But Udio's "Help Center," "HelpBot" and live agents have no specific connection to Illinois. (*See* Ex. D, *Advice and answers from the Udio Team*, Udio (accessed Feb. 6, 2026), https://help.udio.com/en.) This is routine customer support not located in Illinois on Udio's side. Udio's customer service provides no relevant contacts between Udio and Illinois.

10

**6.** **A Company's Nationwide Growth and Advertising. (FAC ¶¶ 45(a29)-(a30), (a54)-(a55).)**

Udio's alleged rapid nationwide growth, including of its Illinois user base (FAC ¶¶ 45(a29-a30)), and a nationwide marketing, analytics, and email campaign that could reach Illinois residents is equally insufficient to establish jurisdiction in Illinois. (*Id.* ¶¶ 45(a54)-(a55).) Measuring Illinois traffic along with traffic from other states does not mean that Udio targets Illinois. Udio does not direct any specific advertising or marketing toward users in Illinois, engage in geotargeting of Illinois users, nor direct its generative AI model's product features toward Illinois users separate and apart from users who reside in other states. (Ex. C, Sanchez Decl. ¶¶ 6-8.) Udio simply does not target Illinois. (*Id.* ¶ 9.)

As a general rule, without actions that specifically target the forum, "national advertisements are insufficient to subject a defendant to jurisdiction in Illinois." *Schoeps v. Sompo Holdings, Inc.*, 736 F. Supp. 3d 582, 601 (N.D. Ill. 2024), *aff'd on other grounds*, 160 F.4th 815 (7th Cir. 2025) (quoting *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 737 (N.D. Ill. 2011)). Plaintiffs' marketing allegations are insufficient to establish jurisdiction over Udio.

**7.** **Plaintiffs' Residence and Claims. (FAC ¶¶ 45(a31), (a33), (a36)-(a38).)**

Allegations that some Plaintiffs reside in Illinois and that some claims in the case are brought under Illinois law are insufficient to establish the Court's specific personal jurisdiction over Udio. (FAC ¶¶ 45(a31), (a33), (a36).) The Court must "focus on the acts and activities of the defendant" when evaluating purposeful direction and availment, and "specific personal jurisdiction cannot depend solely on the actions of the plaintiff or third parties." *In re Sheehan*, 48 F.4th 513, 522-23 (7th Cir. 2022).

11

Plaintiffs' allegations that Udio's conduct harmed Illinois creators are irrelevant. "[I]njury to a forum resident, even if predictable, is not a sufficient connection to the forum" to establish personal jurisdiction over a defendant. *Id.* at 524 (citing *Walden*, 571 U.S. at 290). Finding jurisdiction based on these allegations would "allow[ ] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. For specific personal jurisdiction, "it is not enough that the defendant took some action that ultimately had an effect on the plaintiff in the forum." *In re Sheehan*, 48 F.4th at 523.

Plaintiffs' allegations that Udio "collected, captured, processed, stored, and commercially used" Illinois residents' biometric information "through its AI systems" do not change this analysis. (FAC ¶ 45(a37); *see also id*. ¶¶ 47, 246, 265.) All of Udio's alleged activities emanate from Udio's principal place of business in New York. (Ex. C, Sanchez Decl. ¶ 11, 13; FAC ¶ 41.) Plaintiffs do not—and cannot—plead any facts to suggest that the development, training, or operation of Udio's AI model (or the decisions directing those activities) occurred in Illinois. Plaintiffs make no allegations that Udio uniquely targeted the biometric data of Illinois residents, nor that Udio collected data from within the Illinois. Rather, Plaintiffs allege that Udio collected lyrics and music—including any voice data within the music—from publicly available online sources like YouTube. (FAC ¶¶ 61, 64.) Such allegations are insufficient to support personal jurisdiction over a defendant in Illinois. *See Gullen v. Facebook.com, Inc.*, 2016 WL 245910 at *2 (N.D. Ill. Jan. 21, 2016) ("Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook."). For the Court to exercise specific personal jurisdiction, "litigation must arise out of contacts that the *defendant* has created with the

forum state"; not contacts engineered by anyone else. *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 819 (7th Cir. 2021).

### 8. No Illinois-Specific Restrictions or Fraud Prevention Methods. (FAC ¶¶ 45(a39)-(a40).)

Plaintiffs allege, on information and belief, that "Udio maintains restrictions, guardrails, and/or moderation systems and applies or tunes those systems in connection with user location and regulatory compliance, including for Illinois users" (FAC ¶ 45(a39)), and "Udio's platform records prompt strings, generation parameters, and output identifiers for user accounts, including accounts accessed from Illinois, as part of quality control, abuse prevention, and feature development" (*id.* ¶ 45(a40)). But Udio does not target Illinois nor treat Illinois users differently than those from any other state in this respect. (Ex. C. Sanchez Decl. ¶ 9.) Routine logging, quality-control measures, and abuse-prevention systems applied uniformly to all users—including those in Illinois—do not constitute express aiming at Illinois or purposeful availment of the forum. They are ordinary incidents of maintaining a modern interactive website and thus do not justify exercising specific personal jurisdiction. *See Adv. Tactical*, 751 F.3d at 801-03.

### 9. The Location of Third-Party Web-Traffic Routers and Infrastructure. (FAC ¶¶ 45(a42)-(a46), (a48), (a57).)

Udio's alleged use of a third-party, Cloudflare, to route Illinois-based web-traffic before sending it on to Udio's website and cloud storage hosts and servers outside of Illinois likewise cannot confer personal jurisdiction. (FAC ¶¶ 45(a42)-(a46).) The same is true of Plaintiffs' allegations that Udio hosts and serves its AI-generated audio and video assets with third-party provider Google Cloud Storage and uses a third-party delivery network, Vercel, to distribute its application code and assets. (*Id.* ¶¶ 45(a48) and (a57).)

Whether Udio's content delivery and security vendor, Cloudflare, routes web-traffic out of Illinois is irrelevant, as is the location of any other third-party vendors like Google or Vercel. Even

13

if these parties operate in Illinois, the fact that a defendant's third-party vendors may have some servers or other infrastructure located in a forum state does not justify a finding that the defendant "purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in" that state. *Matlin*, 921 F.3d at 706; *see Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020) (declining to find personal jurisdiction over defendant and stating that "the Court has not located[ ] any case where the location of third-party servers, as opposed to servers affiliated with one of the parties, was sufficient to satisfy purposeful direction"); *Prevail Legal, Inc. v. Gordon*, 2021 WL 1947578, at *5 (N.D. Cal. May 14, 2021) ("Courts in this circuit have held that the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction." (collecting cases)).

*Greenspan v. MasMarques*, 2024 WL 1258062, at *11 (D. Mass. Mar. 25, 2024), is directly on point. There the court addressed whether the use of Cloudfare could confer jurisdiction over the defendant in the forum state. The *Greenspan* court dismissed the suit for lack of personal jurisdiction. *Id.* The court explained that "the mere possibility that the [defendants] may be providing users with IP addresses through a data center in Boston is not the sort of specific and purposeful targeting that would amount to purposefully availing themselves to Massachusetts." *Id.*; *see also Freeman v. 3Commas Techs. OU*, 2024 WL 1880147, at *2 (N.D. Cal. Mar. 25, 2024) (concluding that presence of Cloudflare's servers in the forum state were inadequate to establish jurisdiction).

Contacts with and activity in Illinois by third parties like Cloudfare, Google or Vercel are "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286. Allegations concerning them have no bearing on whether this Court can exercise specific personal jurisdiction over Udio. It cannot.

\* \* \* \* \*

14

Plaintiffs' laundry list of sub-allegations in support of their effort to conjure up jurisdiction is lengthy and dense, but density and length is no substitute for legal merit. There is no basis for this Court to exercise personal jurisdiction over Udio. The First Amended Complaint therefore should be dismissed.

## II. Alternatively, The First-to-File Doctrine Applies to Stay or Dismiss the Case.

If the Court were to hold that it has personal jurisdiction over Udio, the case should be dismissed or stayed based on the *Justice* case, pursuant to the first-to-file doctrine. Courts have the "'inherent power to administer their dockets …' by avoiding duplicative litigation." *Askin v. Quaker Oats Co.*, 2012 WL 517491, at *3 (N.D. Ill. Feb. 15, 2012) (quoting *Trippe Mfg. Co. v. Am. Power Conv. Corp.*, 46 F.3d 624, 629 (7th Cir. 1995)). "The 'first-to-file' doctrine provides that when identical or nearly identical suits are filed in separate districts, 'the first case should be allowed to proceed and the second should be abated.'" *Hussein v. Adidas America, Inc.*, 2023 WL 8787791, at *1 (N.D. Ill. Dec. 19, 2023) (quoting *Asset Allocation & Mgmt. Co. v. W. Emp'rs Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989)). "The doctrine exists 'to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Id.* (quoting *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977)). Where a duplicative action is pending, district courts have broad discretion to dismiss a complaint. *McReynolds v. Merrill Lynch Co., Inc.*, 694 F.3d 873, 888-89 (7th Cir. 2012).

"District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another." *Nicholson v. Nationstar Mortg. LLC of Del.*, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) and *Ridge Gold Std. Liquors v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)). "Generally, however, 'a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Id.* (quoting *Serlin*, 3 F. 3d at

15

223). "When comparing the similarity of the parties in two putative class actions, the focus of the substantially similar inquiry is on the putative class members rather than the named plaintiffs themselves." *Id.* "As with the parties comparison, there need not be complete congruence of the issues among cases to invoke the first-to-file rule: there only needs to be substantial overlap of the issues between them for the rule to apply." *Id.* at *7. The presence of different state law claims is not disqualifying; the court looks to the underlying facts, the "gravamen of the allegations," and the relief requested. *Id.* Where the "claims and requested relief are all based on the same core factual allegations, they are sufficiently similar for purposes of the first-to-file rule." *Id.* at *8.

The first-to-file doctrine applies here. The *Justice* case was filed in June 2025, four months before Plaintiffs filed this lawsuit. With respect to the duplication of claims, the two lawsuits contain overlapping copyright, DMCA and related claims based on alleged wrongful conduct in how Udio trained or created its music generating AI model. The existence of state-specific claims and subclasses does not create a substantial difference. *Id.* at *7. The two cases seek the same types of relief. *See supra* at 2-3. That is sufficient to establish that the cases substantially overlap.

With respect to the similarity of parties, Plaintiffs here and the *Justice* plaintiffs seek to represent putative nationwide classes of independent musicians. (*Compare* FAC ¶ 113 *with* Ex. B, *Justice* Compl. ¶ 353.) Plaintiffs here expressly exclude the named *Justice* plaintiffs from any putative class, an implicit admission that the classes are duplicative. (FAC ¶¶ 113, 113(m).) The Court must look at whether the putative class members, not the named plaintiffs, overlap—which they undoubtedly do. *Nicholson*, 2018 WL 3344408, at *5. And Udio is the defendant in both.

Dismissal is appropriate, as supported by *McReynolds*. 694 F.3d 873. In that case, brokers sued the firm on a classwide basis for alleged racial discrimination. The court dismissed claims on numerous bases, including that certain claims were duplicative of a previously filed lawsuit

16

asserting the same challenges to the defendant's underlying employment practices. *Id.* at 889. As *McReynolds* recognized in affirming the trial court's decision to dismiss the claims, "allowing a separate suit seeking the same remedy would be redundant." *Id.*

Given the substantial overlap and duplication between this case and the *Justice* case, the Court should exercise its discretion and dismiss the case, allowing the preexisting *Justice* case to proceed to protect the interests of all parties. *Id.* at 888-89.

To the extent that the Court is not inclined to dismiss this case outright, it may also stay the case. In the case of competing class actions, rather than "racing to certification in two federal districts," "[t]he presumptive course of action is to defer [the] case in favor" of the first-filed case. *Hussein*, 2023 WL 8787791, at *1. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Nicholson*, 2018 WL 3344408 at *4 (citation omitted).

Courts consider the following factors when deciding whether to stay a case: whether a stay (i) "will unduly prejudice or tactically disadvantage the non-moving party," (ii) "will simplify the issues in question and streamline the trial," and (iii) "will reduce the burden of litigation on the parties and on the court." *Id.* (quoting *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009)). These factors militate in favor of a stay. *See, e.g.*, *Hussein*, 2023 WL 8787791, at *2 (stating that "where there are twin cases racing toward class certification in separate federal districts at the same time, all three factors counsel in favor of a stay").

***First,*** there is no undue prejudice or tactical disadvantage to Plaintiffs. "[S]taying the case while another class action addresses many of the same issues at play in [the other action] will not foreclose relief being available to the named" Plaintiffs here, if and when *Justice* "progresses to a

point where the stay can be lifted." *Nicholson*, at \*9. **Second,** a stay would simplify the litigation in these cases. *Id.* "With duplicative putative class actions, a stay is highly likely to 'dispense with certain issues and provide certain relief that we will not need to revisit here.'" *Hussein*, 2023 WL 8787791, at \*3 (quoting *Lynn Scott, LLC v. Grubhub, Inc.*, 2021 WL 1088304, at \*5 (N.D. Ill. Mar. 22, 2021)). A stay would also prevent inconsistent rulings. *Id.* The *Justice* case is likely to, at a minimum, resolve the legal issues relating to the federal claims. The existence of further proceedings on the Illinois state law claims is not a basis to deny the stay. *Nicholson*, 2018 WL 3344408, at \*9. **Third,** "a stay would preserve the resources of the parties and reduce the burden of litigation on the Court." *Id.*; *see also Hussein*, 2023 WL 8787791, at \*3 (recognizing that a stay was "likely to lessen the burden" for both parties and allows the Court to avoid "duplicative discovery and motion practice … and potentially unnecessary work by the Court"). A decision in *Justice* "may materially reduce the issues to be decided" in this case. *Nicholson*, at \*9. Litigating certain issues once, in one forum, is patently the most efficient way.

For these reasons, if the Court does not find that outright dismissal is appropriate, the case should be stayed pending further proceedings in the *Justice* case.

## III. Alternatively, This Case Should Be Transferred to New York.

If the Court were to find that it has personal jurisdiction over Udio and that the claims should not be dismissed or stayed pursuant to the first-to-file doctrine, then, in the alternative, the Court should transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). "[T]he apparent trend among Courts in this District is to grant transfer motions under the key geographic factors present here: the defendant is located in the transferee district, two similar class actions are pending in different federal districts and one of the class actions is pending in the transferee district." *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063 (N.D. Ill. 2015). The Court considers: (1) whether venue is proper in both the transferor and transferee

courts; (2) whether the transferee district would be more convenient for the parties and witnesses; and (3) whether a transfer would serve the interest of justice. *See Johnson v. Ford Motor Co.*, 2024 WL 1328829, at *3 (N.D. Ill. Mar. 28, 2024). Each factor weighs in favor of transfer.

### A. The Southern District of New York Is the Proper Forum.

First, venue is proper in the Southern District of New York. 28 U.S.C. § 1400(a) provides that any civil action "relating copyrights … may be instituted in the district in which the defendant or his agent resides or may be found"—which is the Southern District of New York. The general venue statute, 28 U.S.C. § 1391(b), also provides for venue in the Southern District of New York, because that is the principal place of business of Udio and therefore where Udio resides. *See supra* at 3. Venue thus properly lies in the Southern District of New York. *See Willis v. Caterpillar Inc.*, 199 F.3d 902, 905 (7th Cir. 1999) (venue "was clearly proper" in district where the defendant's principal place of business was located). Venue is not proper here under either 28 U.S.C. § 1400(a) or 28 U.S.C. § 1391(b), as it is not where Udio resides nor is it the place "in which a substantial part of the events of the events or omissions giving rise to the claims occurred." *See supra* at 3-4. This factor requires transfer.

### B. The Convenience of the Parties and Witnesses Favor Transfer.

Second, in analyzing the convenience of the parties and witnesses, courts examine: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Bureau of Consumer Fin. Prot. v. Fifth Third Bank, NA.*, 2021 WL 534658, at *2 (N.D. Ill. Feb. 12, 2021). Each of these factors weighs in favor transfer.

#### 1. Plaintiffs' Choice of Forum Deserves No Deference:

A plaintiff's choice of forum is "greatly discounted in class actions" because the "choice of venue will not be the home venue for all plaintiffs and any venue selected is bound to be

19

inconvenient to some plaintiffs." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. Oct. 9, 2009). In fact, two of the named Plaintiffs here reside in Georgia and California. (FAC ¶¶ 33, 38.) Moreover, a plaintiff's forum choice is afforded "less deference … when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *2 (N.D. Ill. July 14, 2021) (citation omitted). The Southern District of New York has a stronger relationship to this dispute: it is Udio's principal place of business and where all of the alleged wrongful conduct originated. *See supra* at 3. In contrast, Illinois has no significant connection to the material events. *See George*, 2021 WL 2948910, at *3 (where "the alleged infringement occurred in many districts nationwide there should not be significant deference given to this District").

### 2 . S.D.N.Y. Is the Situs of Material Events:

As discussed above, the Southern District of New York is the situs of material events, as that is "where the defendant's decisions and activities that gave rise to the claim took place." *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *2 ("Where a corporate defendant's conduct is at issue, courts often look to where the underlying business decisions were made."); *George*, 2021 WL 2948910, at *3 ("[T]he material events inquiry focuses on the location of actions creating the injury, not the location of the injury itself."). Courts consider the location of the defendant's principal place of business and where the allegedly infringing product or service was developed, as infringement cases "typically revolve around the alleged infringer's activities, employees, and documents." *Ill. Comp. Rsch., LLC v. Harpercollins Pub., Inc.*, 2010 WL 4877501, at *2 (N.D. Ill. Nov. 22, 2010).

Here, Udio's "decisions and activities that gave rise to the claim[s] took place" in New York, not Illinois. *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *2. Plaintiffs' claims,

premised on Udio's development, training, and operation of its generative AI models, emanate from New York. (*See, e.g.*, FAC ¶¶ 4-6, 49-105; Ex. C. Sanchez Decl. ¶¶ 11, 13.) New York is thus the situs of material events. *See Ill. Comp. Rsch.*, 2010 WL 4877501, at *2-3.

Absent facts showing Udio targeted Illinois, the availability of Udio's service on the internet is not enough. *See George*, 2021 WL 2948910, at *3 ("When products are sold nationwide, the fact that a product is sold in one district does not force the parties to litigate the case there."). And where any Plaintiffs or putative class members were harmed is irrelevant. *See id.* at *3 (focusing on "the location of actions creating the injury, not the location of the injury itself.").

Because this case has virtually no relationship to this district, and all of the material events occurred in the Southern District of New York, the "situs" factor strongly favors transfer.

### 3. The Relative Ease of Access to Proof Supports Transfer:

The location of documents and evidence favors transfer to the Southern District of New York. Documents and evidence in Udio's possession regarding its generative AI models are in the Southern District of New York, where Udio has its principal place of business. *See Shenzen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*, 2024 WL 2845974, at *7 (N.D. Ill. June 5, 2024) (in infringement case, transfer favored because defendant's documents and evidence were likely in defendant's location). Because the vast majority of this evidence is located in New York, this factor favors transfer.

### 4. S.D.N.Y. is More Convenient for the Witnesses:

The Southern District of New York would be much more convenient for key witnesses. *See George*, 2021 WL 2948910, at *4. Courts look to "the nature and quality of the witnesses' testimony with respect to the issues of the case." *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *3. With respect to Plaintiffs, in a putative class action, there is no location of particular convenience to Plaintiffs. *See In re Extended Stay Hotel Antitrust Litig.*, 2024 WL 5089159, at *4

(N.D. Ill. Dec. 12, 2014) ("[B]ecause the class of putative plaintiffs are nationwide customers …

there is no location that is obviously more or less convenient for Plaintiffs."). Two named Plaintiffs

do not even reside in Illinois. (FAC ¶¶ 33, 38 (alleging Plaintiffs reside in Georgia and

California).) The Court therefore should look to the convenience of Udio's witnesses.

The primary witnesses with information about the development, training, and operation of

Udio's generative AI models are Udio's witnesses. (Ex. C, Sanchez Decl. ¶ 13.) None of these

witnesses are located in Illinois, and all reside in or near the Southern District of New York. (*Id.*)

*See Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at \*3 ("When the testimony of senior

management will likely be an important part of litigation, courts often find it appropriate to transfer

the case to the district where those officers are located."). They will also likely be witnesses in the

*Justice* case, and judicial economy and the conservation of party resources weighs against

requiring duplicative testimony about substantially similar allegations and claims. *See In re*

*Extended Stay*, 2024 WL 5089159, at \*4; *George*, 2021 WL 2948910, at \*4 ("To haul witnesses

into an Illinois courtroom whose roles are potentially duplicative in the related action … would

contravene the purpose of Section 1404(a).").

### 5. S.D.N.Y. Is More Convenient for the Parties:

The Southern District of New York is substantially more convenient for Udio, particularly

given that the *Justice* case there will involve substantially similar witnesses, facts, and legal

arguments. *See supra* at 15-18; *In re Extended Stay*, 2024 WL 5089159, at \*5 ("the inconvenience

of litigating the California action while litigating the substantially similar Illinois action" met the

burden for transfer). Plaintiffs' convenience is less significant in a putative nationwide class action

because "replacement Plaintiffs are likely available in any locale should the burdens of

representation prove unbearable for any currently named Plaintiff." *In re Extended Stay*, 2024 WL

22

5089159, at *4. In sum, the convenience factors favor transfer to the Southern District of New York.

### C. The Interest of Justice Favors Transfer to S.D.N.Y.

Third, the interest of justice (the virtue, not the New York plaintiff, although perhaps his interest as well) favors transferring this case. These factors include: "(1) docket congestion and likelihood to proceed to a speedy trial, (2) each court's relative familiarity with the relevant law, (3) the respective desirability of resolving controversies in each locale, and (4) the relationship of each community to the controversy." *George*, 2021 WL 2948910, at *5. Courts also "consider[ ] the judiciary's interest in trying related litigation together." *In re Extended Stay*, 2024 WL 5089159, at *5. Each of these five factors militate in transferring this case.

*First,* docket congestion and the likelihood to proceed to a speedy trial favor transfer. The current median time from filing to disposition in civil cases is 1.5 months faster (5.6 months versus 7.1 months) and to trial is almost two years faster (34.2 months versus 56.4 months) in the Southern District of New York than in this district. (Ex. E, Excerpts from *U.S. District Court-Judicial Caseload Profile* (June 30, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf.). *See George*, 2021 WL 2948910, at *5. *Second,* the Southern District of New York is ahead in being familiar with the issues. *Justice* has already proceeded to an amended complaint and a Rule 12(b)(6) motion to dismiss. *Third,* these issues should be resolved in one locale. The same considerations raised by the first-to-file doctrine (judicial economy, efficiency in discovery, and the like) weigh in favor of transfer. *See Rosen*, 152 F. Supp. 3d at 1063-65; *In re Extended Stay*, 2024 WL 5089159, at *6. *Fourth,* New York has a greater relationship to the controversy: it is Udio's principal place of business and where the main witnesses are located in or near. Udio's conduct there is primarily at issue. *Fifth,* the judiciary has an interest in trying related litigation

together. Udio's conduct is at issue in both cases, the putative classes are nearly identical, and there is no reason to try these two cases separately.

For these reasons, in the final alternative, this case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## **CONCLUSION**

Udio respectfully requests that the Court dismiss or stay this case or, in the alternative, transfer the case to the Southern District of New York.

Dated: February 6, 2026

Respectfully submitted,

UNCHARTED LABS, INC.,

*/s/Andrew H. Schapiro*
Andrew H. Schapiro
Bevin Brennan
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
andrewschapiro@quinnemanuel.com
bevinbrennan@quinnemanuel.com
*Attorneys for Defendant Uncharted Labs, Inc.*

24

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 6, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ Andrew H. Schapiro
Andrew H. Schapiro