**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) | Case No. 1:25-cv-12613<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Jeannice W. Appenteng |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNCHARTED LABS, INC., d/b/a Udio.com. and UNKNOWN DEFENDANTS, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT UNCHARTED LABS, INC.'S
MOTION TO DISMISS [FIRST AMENDED COMPLAINT] FOR LACK OF PERSONAL
JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2), OR IN THE ALTERNATIVE,
TO DISMISS OR STAY PURSUANT TO THE FIRST-FILED DOCTRINE,
OR IN THE ALTERNATIVE, TO TRANSFER VENUE  PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

LEGAL STANDARD............................................................................................................4

ARGUMENT .........................................................................................................................5

    I.       The Court Has Specific Personal Jurisdiction Over Udio ...............................................5

           A.     Udio deliberately exploits Illinois through recurring subscription
                commerce and repeated in-forum service performance............................................5

           B.     Udio's nine-category attack is a strawman, and the
                Sanchez Declaration's omissions confirm it ............................................................9

           C.     Plaintiffs' claims arise out of or relate to Udio's
                Illinois contacts ......................................................................................................12

                  1.     Copyright and DMCA claims ..................................................................12

                  2.     Illinois statutory claims (BIPA and IRPA).............................................13

                  3.     Plaintiffs do not rely on "effects" alone .................................................15

            D.     Exercising jurisdiction comports with fair play and substantial justice ...............15

            E.     If the Court has any doubt, Plaintiffs request
                focused jurisdictional discovery ............................................................................16

    II.      Venue is Proper In This District ...................................................................................17

           A.     Copyright venue under § 1400(a) is proper .............................................................17

            B.     Venue for the non-copyright claims is independently proper
                under § 1391(b).........................................................................................................18

III.    The First-to-File Doctrine Does Not Warrant Dismissal or a Stay ................................19

    A.    The doctrine is discretionary and requires true duplication ...................................19

    B.    This case is not duplicative of *Justice v. Udio* .......................................................19

        1.    The named parties are different ................................................................19

        2.    The claims are fundamentally different ....................................................20

        3.    The class definitions and predicates diverge in multiple directions .........21

    C.    The equitable remedy for any overlap is coordination,
not dismissal or a stay .......................................................................................22

IV.    Transfer to the Southern District of New York Should Be Denied .............................23

    A.    Private-interest factors do not favor transfer .........................................................23

        1.    Plaintiffs' choice of forum deserves deference ........................................23

        2.    The situs of material events is not exclusively New York ........................23

        3.    The evidence is overwhelmingly digital ...................................................24

        4.    Udio's witness showing is thin .................................................................24

    B.    The interest-of-justice does not favor transfer.......................................................24

        1.    Related litigation does not compel transfer ..............................................24

        2.    Docket statistics do not compel transfer ..................................................24

        3.    Illinois's sovereign interest is the decisive factor ....................................24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

*Advanced Tactical Ordnance Sys. v. Real Action Paintball*,
   751 F.3d 796 (7th Cir. 2014) ........................................................... 5, 8

*be2 LLC v. Ivanov*,
   642 F.3d 555 (7th Cir. 2011) ............................................................. 8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................... 5, 6, 7, 9, 11, 16

*Cent. States v. Reimer Express*,
   230 F.3d 934 (7th Cir. 2000) ........................................................ 17

*Curry v. Revolution Lab'ys*,
   949 F.3d 385 (7th Cir. 2020) ...................................................... 4, 6, 9

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
   592 U.S. 351 (2021) .................................................. 5, 8, 12, 13, 15

*Gullen v. Facebook.com*,
   2016 WL 245910 (N.D. Ill. 2016) ............................................... 14, 15

*Heller Fin. v. Midwhey Powder*,
   883 F.2d 1286 (7th Cir. 1989) ...................................................... 23

*Illinois v. Hemi Grp. LLC*,
   622 F.3d 754 (7th Cir. 2010) ........................................................ 6, 7

*In re Nat'l Presto Indus.,*
   347 F.3d 662 (7th Cir. 2003) ........................................................ 23

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310 (1945) ..................................................................... 5

*Justice v. Udio*, No. 1:25-cv-5026 (S.D.N.Y.) ................................... 2, 19, 24

*Lukis v. Whitepages Inc.,*
   454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................. 16

*Milwaukee Concrete Studios v. Fjeld Mfg.,*

iv

8 F.3d 441 (7th Cir. 1993) ........................................................................... 17

*Mussat v. IQVIA, Inc.,*
   953 F.3d 441 (7th Cir. 2020) ..................................................................... 5

*N. Grain Mktg. v. Greving,*
   743 F.3d 487 (7th Cir. 2014) ................................................................... 17

*Nicholson v. Nationstar Mortg.,*
   2018 WL 3344408 (N.D. Ill. 2018) .......................................................... 19

*Purdue Rsch. Found. v. Sanofi-Synthelabo,*
   338 F.3d 773 (7th Cir. 2003) ..................................................................... 4

*Research Automation v. Schrader-Bridgeport,*
   626 F.3d 973 (7th Cir. 2010) .............................................................. 19, 23

*Rosen v. Spirit Airlines,*
   152 F. Supp. 3d 1055 (N.D. Ill. 2015) ..................................................... 25

*Serlin v. Arthur Andersen,*
   3 F.3d 221 (7th Cir. 1993) ....................................................................... 19

*Smith v. Bayer Corp.,*
   564 U.S. 299 (2011) ........................................................................... 19, 20

*Tamburo v. Dworkin,*
   601 F.3d 693 (7th Cir. 2010) ........................................................... 4, 5, 16

*uBID v. GoDaddy Grp.,*
   623 F.3d 421 (7th Cir. 2010) ..................................................................... 7

*Walden v. Fiore,*
   571 U.S. 277 (2014) ..................................................................... 5, 6, 8, 15

**STATUTES**

735 ILCS 5/2-209(c) ......................................................................................5

740 ILCS 14/5.....................................................................................14, 22, 24

740 ILCS 14/15(a)–(b) .................................................................................14

v

740 ILCS 14/20 ............................................................................................................22

765 ILCS 1075/5...........................................................................................................24

765 ILCS 1075/30.........................................................................................................14

765 ILCS 1075/40–55 ...................................................................................................22

815 ILCS 510/3 .............................................................................................................22

28 U.S.C. § 1391...........................................................................................................18

28 U.S.C. § 1400(a) ......................................................................................................17

28 U.S.C. § 1404(a) .........................................................................................2, 5, 23, 25

## RULES

12(b)(2) ..........................................................................................................................4

**INTRODUCTION**

Udio asks this Court to hold that it may operate a nationwide subscription business, repeatedly contract with Illinois residents, take their money month after month, deliver its product into Illinois on demand, and, as the First Amended Complaint ("FAC") alleges, collect and commercially exploit Illinois residents' biometric identifiers, yet face no accountability in this forum. That is not what due process requires.

The FAC alleges defendant-created Illinois contacts that are the opposite of "happenstance." Udio intentionally accepts Illinois residents as paying customers, enters recurring subscription contracts with them, processes recurring payments from them, and repeatedly performs the core service for users in this District by receiving prompts from Illinois and delivering AI-generated music outputs into Illinois as the product it sells. (FAC ¶¶ 45, 47, ECF No. 23.)

Udio's motion sorts the FAC's 59 jurisdictional sub-paragraphs into nine categories, attacks each one in isolation, and declares none sufficient standing alone. But that technique, disaggregating a mosaic into individual tiles and then complaining that no single tile is a picture, is not the jurisdictional standard. Jurisdiction rests on the totality of Udio's deliberate, recurring Illinois commerce: subscription contracting, recurring billing, interactive service performance, output delivery, analytics tracking, and transactional servicing of Illinois customers.

The CEO's declaration does not help Udio. It confirms Udio operates a uniform nationwide service that does not treat Illinois differently from any other state (Sanchez Decl. ¶¶ 6–9, ECF No. 31 Ex C), but that is precisely the point. What the Declaration denies, Illinois-specific 'targeting' and marketing, is not the constitutional standard. And what it conspicuously omits, whether Illinois residents subscribe, whether Udio processes their payments, whether Udio delivers outputs to them, whether Udio derives revenue from Illinois, is far more telling.

Each of those facts is the kind of commercial data a CEO would be expected to address in a jurisdictional declaration, and each could have been denied under oath. None was.

The FAC also asserts Illinois-specific statutory claims that anchor this case in Illinois. Counts XI and XII arise under the Illinois Biometric Information Privacy Act and the Illinois Right of Publicity Act, statutes enacted to prevent precisely the kind of unauthorized commercial exploitation of Illinois residents' biometric identifiers and personal identities that Plaintiffs allege here. (FAC ¶¶ 239–268, ECF No. 23.) The BIPA and IRPA claims arise from duties that Illinois law imposes specifically to protect Illinois residents. They reflect Illinois's considered legislative judgment that biometric data poses unique and irreversible risks, and that Illinois residents are entitled to specific protections, protections that Udio is alleged to have violated while profiting from Illinois commerce. Illinois has a concrete sovereign interest in providing a forum to enforce those protections.

Udio's fallback arguments fail for independent reasons. First-to-file is a discretionary doctrine that applies only to truly duplicative litigation, and this case is not duplicative of *Justice v. Udio*, No. 1:25-cv-5026 (S.D.N.Y.). The cases involve different named plaintiffs, materially different class definitions and predicates, and fundamentally different claims: this action asserts 14 counts, including Illinois statutory claims absent from *Justice*, while *Justice* asserts four. The Illinois statutory claims and Illinois subclasses at the core of this case cannot be adjudicated as a substitute in a New York action brought under different legal theories by different plaintiffs.

Transfer under § 1404(a) fares no better. Udio has not carried its burden to show that the Southern District of New York is clearly more convenient; it has shown only that New York is more convenient for Udio.

The Court should deny Udio's motion in its entirety. At the pleading stage, the question is

not where Udio's executives sit; it is whether Udio deliberately served Illinois with the accused

product and profited from doing so. The FAC plausibly alleges it did.

## BACKGROUND

Udio is a mass-market AI music product built for speed and scale: users input text

prompts describing musical elements, and Udio returns finished audio outputs in seconds. (FAC

¶¶ 49–50, ECF No. 23.) Udio monetizes that output generation through tiered subscriptions, $10

per month and $30 per month, selling higher-volume generation and broader usage rights,

including commercial use, on paid plans. (FAC ¶ 51, ECF No. 23.)

Udio has scaled aggressively since its April 2024 public launch, gaining millions of users

and expanding access and features, including through a mobile application and additional

creative tools. (FAC ¶¶ 49, 53–54, ECF No. 23.)

Udio's Illinois connection is not incidental. Udio allows and encourages Illinois residents

to create accounts and use the platform. (FAC ¶ 45(a1)–(a5), ECF No. 23.) It offers paid

subscription tiers to Illinois residents on a recurring monthly basis. (FAC ¶ 45(a8)–(a11), ECF

No. 23.) It accepts and processes recurring subscription payments from Illinois users, entering

repeated, ongoing commercial transactions with paying subscribers in this District. (FAC ¶

45(a9), ECF No. 23.) Its subscription flows necessarily collect billing information, including, on

information and belief, address, state, and ZIP code, sufficient to identify Illinois subscribers.

(FAC ¶ 45(a18)–(a19), ECF No. 23.) Users in Illinois assent to Udio's Terms of Service, forming

contractual relationships under which Udio performs ongoing services. (FAC ¶ 45(a11), ECF

No. 23.)

Udio repeatedly performs the core service for Illinois users and delivers the results into

Illinois. Users in Illinois submit prompts and requests from devices located in Illinois; Udio's

3

systems receive those requests at Udio-controlled endpoints, generate AI music outputs, and transmit those outputs back to users in Illinois. (FAC ¶ 45(a6)–(a7), ECF No. 23.)

Udio knows and tracks its Illinois business. It uses analytics and telemetry to measure usage and monetization by geography, including by state and metropolitan area, and on information and belief maintains state-by-state breakdowns of accounts, subscribers, and revenue. (FAC ¶ 45(a20)–(a23), ECF No. 23.) Udio's CEO confirmed in his Declaration that Udio "collects, processes, and analyzes user telemetry and analytics" uniformly for all states, including Illinois. (Sanchez Decl. ¶ 7, ECF No. 31 Ex. C.)

This case is brought by ten independent musicians and songwriters—eight based in Illinois, one in California, and one in Georgia—who allege their livelihoods depend on licensing, attribution, and control over their work and identities. (FAC ¶¶ 14–40, ECF No. 23.)

The FAC alleges 14 counts, including seven counts of copyright infringement, three DMCA counts (CMI removal, anti-circumvention, and false CMI), and claims under the Illinois Biometric Information Privacy Act, the Illinois Right of Publicity Act, the Illinois Uniform Deceptive Trade Practices Act, and for unjust enrichment. (FAC ¶¶ 122–289, ECF No. 23.)

**LEGAL STANDARD**

On a Rule 12(b)(2) motion, Plaintiffs bear the burden of establishing personal jurisdiction. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020). Where, as here, the Court decides the motion without an evidentiary hearing, Plaintiffs need only make a prima facie showing; the Court accepts well-pleaded jurisdictional allegations as true and resolves factual disputes in Plaintiffs' favor. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Illinois's long-arm statute reaches to the constitutional limit. 735 ILCS 5/2-209(c); *Tamburo*, 601 F.3d at 700. Due process requires "minimum contacts" such that exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction exists when (1) the defendant purposefully directed activities at the forum or purposefully availed itself of doing business there; (2) the claims "arise out of or relate to" the defendant's forum contacts; and (3) jurisdiction is consistent with fair play and substantial justice. *Walden v. Fiore*, 571 U.S. 277, 283–86 (2014); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–62 (2021). The "relate to" prong is disjunctive and not confined to strict but-for causation. *Ford*, 592 U.S. at 362. If minimum contacts are shown, jurisdiction is presumptively reasonable and the defendant must make a "compelling case" that it would be unfair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). In a putative class action, jurisdiction is assessed based on the named plaintiffs' claims. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447–48 (7th Cir. 2020).

The applicable standards for venue, first-to-file, and transfer under 28 U.S.C. § 1404(a) are set forth in the relevant argument sections below.

## ARGUMENT

### I. The Court Has Specific Personal Jurisdiction Over Udio.

#### A. Udio deliberately exploits Illinois through recurring subscription commerce and repeated in-forum service performance.

Udio's jurisdictional argument rests on a premise the law does not support: that a company may operate a nationwide, subscription-based commercial enterprise—one that repeatedly contracts with Illinois residents, repeatedly bills them, repeatedly performs the core service for them, and repeatedly delivers the resulting product into Illinois—and yet remain immune from suit here because it has no office or employees in the state. The Seventh Circuit's

5

internet-jurisdiction cases do not create such a safe harbor. *See Curry*, 949 F.3d at 398–402 (online commerce plus repeated shipments and sales into forum constitutes purposeful availment); *Hemi Grp.*, 622 F.3d at 757–59 (repeated commercial transactions with forum residents supports jurisdiction); *see also Burger King*, 471 U.S. at 473–76 (continuing obligations and ongoing commercial relationships constitute purposeful availment). Due process asks whether the defendant purposefully created forum contacts through its own conduct. *Walden*, 571 U.S. at 284–85. The FAC alleges Udio did exactly that, on three independent and mutually reinforcing grounds.

*First*, Udio forms continuing, revenue-generating contractual relationships with Illinois residents, by design, not by accident. Udio offers tiered subscription plans to Illinois residents, including paid tiers at approximately $10 and $30 per month. (FAC ¶ 45(a8)–(a9), ECF No. 23.) Udio accepts and processes payment for those subscriptions, "thereby enter[ing] repeated, ongoing commercial transactions with paying users, including users located in Illinois." (FAC ¶ 45(a9), ECF No. 23.) Udio's subscription onboarding necessarily captures billing address, state, and ZIP code for payment authorization, tax compliance, and subscription renewal, meaning Udio knows it is contracting with and collecting recurring subscription revenue from Illinois residents. (FAC ¶ 45(a9), (a18)–(a19), ECF No. 23.) Users who register for Udio, including Illinois users, assent to Udio's Terms of Service and related policies, forming contractual relationships under which Udio performs ongoing services. (FAC ¶ 45(a11), ECF No. 23.) Udio permits broader usage and commercialization of AI-generated outputs under paid tiers, including by allowing Illinois subscribers to generate substantially more outputs and to use them more extensively, thereby monetizing Illinois-based usage. (FAC ¶ 45(a10), ECF No. 23.)

6

This is purposeful availment under first principles. Udio "reach[es] out beyond" its home state, forms continuing obligations with Illinois residents, and profits from those obligations month after month. *Burger King*, 471 U.S. at 473–76. The *Burger King* franchise system was available nationwide and the defendant could have opened a franchise in any state. Yet, jurisdiction existed because the defendant entered a continuing commercial relationship in the forum, not because the franchisor targeted the forum specifically. *Id.* at 479–80. Udio cannot convert those defendant-created, recurring commercial relationships into "unilateral" user activity by calling them "internet access." *See also uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427–30 (7th Cir. 2010) (specific jurisdiction where defendant deliberately exploited forum market through business relationships and sales); *Hemi Grp.*, 622 F.3d at 757–59.

*Second,* Udio repeatedly performs the core service for Illinois users and delivers the product into Illinois. Udio seeks to reduce these activities to 'mere accessibility.' But the FAC alleges repeated, bilateral exchanges: Illinois users submit prompts, and Udio generates and delivers custom audio outputs back to them. (FAC ¶ 45(a6)–(a7), (a13)–(a14), ECF No. 23.) The Constitution does not require this Court to treat a subscription service that delivers an interactive product into Illinois as equivalent to a static webpage cached on a user's browser.

That matters because it is Udio's conduct, not the user's unilateral activity, that creates the forum contact. Udio sells access, takes the subscription payment, and then repeatedly performs and delivers the core product into Illinois as part of the commercial bargain it struck with Illinois customers. The Constitution does not require this Court to treat a subscription service that delivers an interactive product into Illinois as equivalent to a static webpage cached on a user's browser.

7

The Seventh Circuit's internet-jurisdiction cases reject jurisdiction based on passive accessibility, meaning the ability to visit a website from the forum. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–03 (7th Cir. 2014). They do not address, and do not foreclose, jurisdiction based on active commerce: recurring subscription contracts, recurring billing, and repeated delivery of custom products to identified forum customers.

*Third*, Udio knows it is exploiting Illinois and actively tracks, services, and monetizes Illinois commerce. Udio's subscription flows collect billing information identifying Illinois subscribers by address and ZIP code (FAC ¶ 45(a18)–(a19), ECF No. 23), and Udio uses analytics to measure usage and monetization by geography, including by state and metropolitan area (FAC ¶ 45(a20)–(a23), ECF No. 23). Udio's CEO confirmed that Udio 'collects, processes, and analyzes user telemetry and analytics' uniformly for all states including Illinois. (Sanchez Decl. ¶ 7, ECF No. 31 Ex. C.)

These allegations describe deliberate, trackable Illinois exploitation: billing-based knowledge of Illinois customers, geographic analytics identifying Illinois usage and revenue, transactional servicing of Illinois subscribers, and ongoing commercial engagement with the Illinois market. Under *Walden*, that is the kind of defendant-created forum connection sufficient to establish jurisdiction. 571 U.S. at 284–85.

Udio's implicit premise, that a uniform nationwide service cannot create jurisdiction in any particular state, proves too much. In *Ford Motor Co.*, Ford sold identical vehicles in all 50 states and did not target Montana or Minnesota with unique products or advertising. The Supreme Court held specific jurisdiction existed anyway, because Ford deliberately served those markets with the product at issue. 592 U.S. at 365. The principle applies here. A defendant that

deliberately serves the Illinois market through recurring subscription contracts and repeated delivery of the accused product has purposefully availed itself of Illinois, whether or not it serves every other state on identical terms.

### B. Udio's nine-category attack is a strawman, and the Sanchez Declaration's omissions confirm it.

Udio's motion sorts the FAC's 59 jurisdictional sub-paragraphs into nine categories and attacks each in isolation, declaring each one insufficient standing alone. (Mem. at 6–14, ECF No. 31.) But jurisdiction does not depend on whether any single category of contact, viewed in a vacuum, independently satisfies due process. It depends on the totality of the defendant's deliberate, recurring forum contacts and their relationship to the claims. *See Burger King*, 471 U.S. at 476; *Curry*, 949 F.3d at 399–402 (aggregating multiple types of online commercial contacts to find purposeful availment).

Udio's approach, atomizing a mosaic into individual tiles and then declaring each tile insufficient, would immunize any nationwide internet subscription business from suit anywhere other than its headquarters. A company could sell subscriptions to residents of all 50 states, bill them monthly, deliver products to them on demand, track their usage by geography, and service their accounts, and yet, under Udio's theory, no individual category of contact would suffice because each one is "available to users everywhere." That is not the law. Udio's position leads to an untenable result: the more states a company does business in, the fewer states can hold it accountable. Due process does not reward breadth of commercial exploitation with immunity from suit.

Udio characterizes the FAC's jurisdictional allegations as "seemingly throw[ing] everything at the jurisdictional wall in hope that something might stick" and describes them as a "dizzying array" offered in "a whopping 59 paragraphs." (Mem. at 1, 5, ECF No. 31.) This

rhetoric should not obscure what actually happened. Udio moved to dismiss the original complaint for lack of personal jurisdiction. Plaintiffs exercised their right to amend and responded with detailed factual allegations supported by specific references to Udio's publicly available platform features and policies. The Court should not penalize Plaintiffs for doing what the Rules contemplate: responding to a jurisdictional challenge with a well-pleaded amended complaint. If Udio believes any of those allegations are false, it had the means to say so under oath. It did not.

Several of Udio's categories warrant brief responses, though Plaintiffs emphasize that jurisdiction rests on the totality of contacts, not any single category. Udio dismisses its subscription commerce as "not suit-related" because Plaintiffs sue as musicians, not as Udio subscribers. (Mem. at 8–9, ECF No. 31.) But Plaintiffs challenge Udio's entire commercial enterprise, the system that copies, trains, generates, and sells outputs to paying customers, including Illinois customers. The subscription revenue from Illinois is generated by the very product built on alleged unauthorized use of Plaintiffs' works. Udio argues that its analytics and telemetry are "standard components" used by "almost every modern website." (Mem. at 10, ECF No. 31.) The point is not that analytics are unusual; it is that Udio knowingly serves, tracks, and profits from Illinois. Udio argues that third-party infrastructure (Cloudflare, Google Cloud, Vercel) cannot confer jurisdiction. (Mem. at 13–14, ECF No. 31.) But Plaintiffs do not rely on any single category of contact in isolation, including infrastructure. Udio selected, configured, and pays for the infrastructure through which it delivers its service to Illinois users. That is part of the totality of Udio's Illinois-directed commerce, not a basis for evaluating jurisdiction in a vacuum.

The Sanchez Declaration confirms, rather than negates, jurisdiction. Udio's CEO submitted a 13-paragraph declaration that addresses what Udio does *not* do in Illinois: no employees, no physical operations, no Illinois-specific advertising, no geotargeting, no Illinois-specific product features. (Sanchez Decl. ¶¶ 5–9, ECF No. 31 Ex. C.) But the Declaration is notable for what it does not deny. Mr. Sanchez does not deny that Illinois residents subscribe to Udio. He does not deny that Udio processes recurring payments from Illinois users. He does not deny that Udio delivers outputs to Illinois users. He does not deny that Udio collects billing information identifying Illinois subscribers. He does not deny that Udio derives revenue from Illinois. Each of those facts is the kind of commercial data a CEO would be expected to address in a jurisdictional declaration, and each could have been denied under oath. None was.

The Declaration's revisions underscore the point. Udio originally filed a 12-paragraph version supporting its motion against the original complaint. (ECF No. 20 Ex. C.) After Plaintiffs amended, Udio filed a revised 13-paragraph version that selectively added material about Cloudflare and third-party infrastructure (Sanchez Decl. ¶ 10, ECF No. 31 Ex. C), analytics practices (id. ¶ 7, ECF No. 31 Ex. C), and advertising and guardrails (id. ¶¶ 6, 8, ECF No. 31 Ex. C). But given a second opportunity to address Illinois subscribers, Illinois revenue, Illinois billing data, and Illinois output delivery volume, the CEO again chose silence. The selective updating makes the omissions more telling, not less.

The Declaration's assertion that "Udio does not target Illinois differently than any other state" (Sanchez Decl. ¶ 9, ECF No. 31 Ex. C) is a characterization for the Court to evaluate, not a defense. On its face, it confirms that Udio's nationwide commercial operation uniformly includes Illinois, a deliberate decision to include Illinois in Udio's customer base, which is purposeful availment. *See Burger King*, 471 U.S. at 473–76. And Paragraph 7 admits that Udio "collects,

11

processes, and analyzes user telemetry and analytics" uniformly for all states including Illinois, confirming the FAC's allegations that Udio knowingly collects and processes data from Illinois users in the ordinary course. (FAC ¶¶ 45(a20)–(a23), ECF No. 23.)

**C.      Plaintiffs' claims arise out of or relate to Udio's Illinois contacts.**

Udio's "no nexus" argument rests on a litigation frame: it tries to recast this case as solely about where Udio trained a model, while treating as jurisdictionally irrelevant the commercialization that makes Udio's enterprise profitable. That is not the Supreme Court's test. Due process requires that the claims "arise out of or relate to" the defendant's forum contacts. *Ford*, 592 U.S. at 359–62. The phrase is disjunctive: "relate to" reaches cases where a defendant deliberately serves a forum market for the very product challenged in the suit, even if the defendant tries to locate upstream design decisions elsewhere. *Id.* at 362. The FAC alleges Udio repeatedly provides the accused subscription service in Illinois, receiving prompts from Illinois users, generating outputs, and delivering those outputs into Illinois. (FAC ¶ 45(a6)–(a7), (a12)–(a14), (a24), ECF No. 23.) And the FAC ties the operative, claim-giving conduct to Illinois across every category of claims.

**1.      Copyright and DMCA claims.** The FAC alleges that Udio has "generated, delivered, and distributed into Illinois outputs that incorporate, are derived from, or are substantially similar to Plaintiffs' copyrighted musical works and sound recordings, including outputs created and consumed by Illinois users through Udio's platform." (FAC ¶ 45(a24), ECF No. 23.) The FAC further alleges that "Udio's recurring subscription revenue and growth (including revenue derived from Illinois subscribers) is, on information and belief, driven in material part by the platform's ability to generate high-fidelity, human-like, and recognizable outputs that Plaintiffs allege infringe their works and exploit their voices and identities." (FAC ¶

12

45(a34), ECF No. 23.) The subscription revenue generated in Illinois is directly attributable to the very product built on the alleged unauthorized use of Plaintiffs' works. Under *Ford*, that connection satisfies "relate to."

Udio argues that its subscription contacts are "not suit-related" because Plaintiffs are musicians, not subscribers. (Mem. at 8–9, ECF No. 31.) That framing artificially severs the product from the platform that sells it. Plaintiffs challenge the entire commercial system—the system that copies, trains, generates, and sells outputs to paying customers. The FAC alleges that Udio "distributes these CMI-stripped outputs to paying users as generated tracks, knowing they will be uploaded and exploited on third-party platforms without proper attribution, further concealing infringement." (FAC ¶ 92, ECF No. 23.) The subscription model is the delivery mechanism for the alleged harm: it is through subscriptions that Udio monetizes the outputs generated from Plaintiffs' works, and it is through subscription-driven delivery that those outputs reach Illinois users and displace Plaintiffs in Illinois markets.

      **2.**      **Illinois statutory claims (BIPA and IRPA).** The Illinois claims provide an independent, especially strong basis for suit-relatedness because they arise from statutory duties specifically designed to protect Illinois residents. The FAC alleges that Udio "collected, captured, processed, stored, and commercially used biometric identifiers and/or biometric information of Illinois residents, including voiceprints and/or voice-derived embeddings, through its AI systems." (FAC ¶ 45(a36), ECF No. 23.) It alleges that Udio "generated, delivered, and distributed into Illinois voice-simulative outputs that replicate or closely simulate protected vocal identifiers of Plaintiffs and other Illinois residents" and that "Udio uses the availability of such outputs to market, promote, and sell its subscription service to users, including users in Illinois." (FAC ¶ 45(a25), ECF No. 23.) And it alleges that "Udio's Illinois statutory violations are suit-

related because Udio uses the ability to generate human-sounding and voice-simulative outputs to market and sell subscriptions in Illinois and to drive paid tiers used by Illinois customers." (FAC ¶ 45(a37), ECF No. 23.)

These claims are not incidental add-ons. They are core sources of liability arising directly from the intersection of Udio's Illinois commerce and Illinois's specific statutory protections. BIPA imposes affirmative duties on private entities that collect biometric identifiers from Illinois residents: written notice, informed consent, published retention schedules, and destruction protocols. 740 ILCS 14/15(a)–(b). These duties are triggered by the act of collecting biometric data from Illinois residents, which the FAC alleges Udio does through the very service it sells to Illinois subscribers. IRPA separately prohibits the commercial use of an individual's identity, including voice, without prior written consent. 765 ILCS 1075/30. The FAC alleges Udio commercially exploits Illinois artists' voices and identities to market, promote, and sell its subscription service in Illinois. (FAC ¶ 45(a25), (a37)–(a38), ECF No. 23.)

The suit-relatedness of these claims is inherent. BIPA and IRPA duties are triggered by conduct directed at Illinois residents, and Udio's alleged biometric collection and identity exploitation occur through the subscription service Udio provides to Illinois users, connecting Udio's Illinois contacts directly to the Illinois statutory claims.

Illinois's sovereign interest in enforcing these protections is substantial. BIPA and IRPA reflect a considered legislative judgment that biometric data and personal identity require specific, enforceable protections for Illinois residents, an interest discussed further in connection with the transfer analysis below. *See* Part IV.B.3, *infra*.

Udio cites *Gullen v. Facebook.com, Inc.*, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016), for the proposition that BIPA allegations do not create personal jurisdiction where the defendant

14

does not "target" biometric collection at Illinois residents. (Mem. at 12, ECF No. 31.) *Gullen* is distinguishable and its reasoning has been overtaken by *Ford*. The *Gullen* court applied a narrow view of suit-relatedness, asking whether Facebook specifically "target[ed] its alleged biometric collection activities at Illinois residents." 2016 WL 245910, at *2*. But *Ford*, decided five years later, broadened the inquiry: a claim need not arise directly from the defendant's forum contacts so long as there is a sufficient "connection between the forum and the specific claims at issue." 592 U.S. at 362. Here, Udio's biometric collection is embedded in the commercial relationship it deliberately created with Illinois users, not a passive byproduct of website accessibility.

3. **Plaintiffs do not rely on "effects" alone.** Udio invokes *Walden*'s defendant-focused rule, but Plaintiffs' nexus theory is itself defendant-focused: Udio sells subscriptions in Illinois, performs the service for Illinois users, delivers the accused outputs here, and collects and exploits Illinois residents' biometric data through the service it provides. (FAC ¶ 45(a8)–(a16), (a24)–(a25), (a33)–(a38); ¶ 47(a3)–(a11), (a27)–(a31), ECF No. 23.) The FAC specifically alleges that for the BIPA claims, "the capture and resulting injuries occurred primarily and substantially in Illinois" (FAC ¶ 246, ECF No. 23), and that for the IRPA claims, "the challenged uses and injuries occurred primarily and substantially in Illinois" (FAC ¶ 265, ECF No. 23). That is defendant-created, suit-related forum conduct, not "effects-only" injury.

Even if the Court views model training as the first step in the alleged scheme, the FAC plausibly alleges Udio's continuing Illinois-directed commercialization and distribution of the accused outputs as the mechanism of harm, contacts that "relate to" the claims and requested relief under *Ford*. (FAC ¶¶ 51–54, 92; 592 U.S. at 362, ECF No. 23.)

**D.** **Exercising jurisdiction comports with fair play and substantial justice.**

Once Plaintiffs make a prima facie showing of purposeful availment and relatedness,

15

jurisdiction is presumptively reasonable; Udio must present a "compelling case" that jurisdiction would be unfair. *Burger King*, 471 U.S. at 476–78. Udio does not come close.

Illinois has a strong interest in adjudicating this dispute. The case is anchored by Illinois-based named Plaintiffs and includes claims under Illinois statutes specifically designed to protect Illinois residents from unauthorized exploitation of their biometric identifiers and identities. *See Tamburo*, 601 F.3d at 709; *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 756 (N.D. Ill. 2020) (Illinois's interest in enforcing IRPA supports jurisdiction). Plaintiffs' interest in litigating at home is substantial, as the case is anchored by Illinois Plaintiffs asserting Illinois-directed claims.

Udio's burden in litigating here is not undue. Udio operates a national subscription business, knowingly contracts with Illinois residents, repeatedly bills them, and repeatedly delivers the accused service into Illinois. (FAC ¶ 45(a7)–(a16), (a18)–(a30), ECF No. 23.)

The Sanchez Declaration does not establish unfairness. It notes no Illinois employees and New York-area witnesses (Sanchez Decl. ¶¶ 5, 13, ECF No. 31 Ex. C), but says nothing about actual litigation burden—no travel costs, schedule conflicts, or concrete impediment. The absence of a local office does not render the forum's jurisdiction unfair to a company that does business in the forum through ongoing subscription commerce. *See Burger King*, 471 U.S. at 476.

> **E.      If the Court has any doubt, Plaintiffs request focused jurisdictional discovery.**

Plaintiffs maintain that the FAC plausibly and sufficiently alleges deliberate Illinois-directed subscription commerce and ongoing service performance into this District. But if the Court concludes that the Sanchez Declaration creates a factual dispute requiring resolution, fairness and Seventh Circuit practice support permitting narrow discovery aimed at the facts

16

Udio's Declaration leaves unaddressed, rather than dismissing the case because Udio alone controls the relevant data. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).

The Sanchez Declaration does not address Illinois subscribers, Illinois revenue, Illinois output delivery, or Illinois billing data, all facts within Udio's exclusive control. The FAC alleges Udio maintains these metrics in the ordinary course (FAC ¶ 45(a18)–(a23), (a28), ECF No. 23), and the Declaration's own admission that Udio collects and processes telemetry uniformly for all states (Sanchez Decl. ¶ 7, ECF No. 31 Ex. C) confirms such data exists.

If the Court determines that Plaintiffs' prima facie showing requires corroboration, Plaintiffs request focused, time-bound discovery limited to Illinois subscriber counts and revenue, output delivery volume to Illinois users, billing records identifying Illinois subscribers, and geographic analytics data. Such discovery would be narrowly tailored to the jurisdictional question and would allow the Court to decide the motion on a complete record.

## II. Venue Is Proper in This District.

Plaintiffs bear the burden of establishing that venue is proper. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

### A. Copyright venue under § 1400(a) is proper.

Udio's venue argument for the Title 17 claims is derivative: it concedes a copyright defendant "may be found" in any district where it is subject to personal jurisdiction. *See Milwaukee Concrete Studios*, 8 F.3d at 443, 445. Because Udio is subject to personal jurisdiction in this District, it "may be found" here for § 1400(a) purposes. The FAC pleads the district-tethered, suit-related conduct that makes Udio "found" here: Udio repeatedly performs its subscription service for users in this District, transmits and delivers outputs into this District, and

17

has generated and delivered into this District outputs alleged to infringe Plaintiffs' works. (FAC ¶ 45(a6)–(a7), (a12), (a24); ¶ 47(a5)–(a11), ECF No. 23.)

**B.     Venue for the non-copyright claims is independently proper under § 1391(b).**

*First*, Udio "resides" in this District because it is subject to personal jurisdiction here. (FAC ¶ 47(a13)–(a15), ECF No. 23); 28 U.S.C. § 1391(b)(1), (c)(2), (d).

*Second*, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. 28 U.S.C. § 1391(b)(2). The FAC alleges in-district events constituting the day-to-day conduct that operationalizes the challenged enterprise here: repeated interactive sessions initiated from this District; prompts and inputs transmitted from devices here; output generation and transmission into this District; maintenance of user accounts repeatedly accessed from this District; and subscription billing, renewals, and transactional communications with users here. (FAC ¶ 47(a8)–(a11), (a16)–(a26), ECF No. 23.)

For the BIPA and IRPA claims, the FAC alleges that a substantial part of the events occurred in this District because Udio collects and commercially uses Illinois residents' biometric identifiers through its service and disseminates voice-simulative outputs to and within this District. (FAC ¶ 47(a27)–(a31), ECF No. 23.)

Udio's venue argument suffers from the same flaw as its personal jurisdiction argument: it defines the "events giving rise to" Plaintiffs' claims as only upstream model development in New York. It treats Udio's Illinois-based commercialization as "tangential." But § 1391(b)(2) does not require that all or most events occur in the forum, only "a substantial part." *Research Automation*, 626 F.3d at 978. The events Udio dismisses, subscription sales, service performance, output delivery, and biometric collection, are the commercial conduct through

which the challenged enterprise operates in this District and through which the alleged injuries are inflicted.

### III.   The First-to-File Doctrine Does Not Warrant Dismissal or a Stay.

#### A.   The doctrine is discretionary and requires true duplication.

First-to-file is not a jurisdictional bar. It is a discretionary, equitable doctrine rooted in a court's inherent power to manage its docket by avoiding truly duplicative litigation. *Serlin*, 3 F.3d at 223. The Seventh Circuit "does not rigidly adhere" to the doctrine, and it applies only "where the facts of the case are replicated." *Research Automation*, 626 F.3d at 980. Two suits are duplicative if their "claims, parties, and available relief do not significantly differ." *Nicholson v. Nationstar Mortg. LLC of Del.*, 2018 WL 3344408, at 5 (N.D. Ill. July 6, 2018). That is a demanding standard, and for good reason: otherwise, first-to-file becomes a device for exporting any later-filed case to wherever the defendant was first sued.

#### B.   This case is not duplicative of *Justice v. Udio*.

Udio invokes *Justice v. Udio*, No. 1:25-cv-5026 (S.D.N.Y.), filed in June 2025. (Mem. at 15, ECF No. 31.) But the two cases materially diverge on every axis the doctrine examines.

**1.   The named parties are different.** This case is brought by nine independent artists, seven of whom are Illinois-based, along with an Illinois LLC. (FAC ¶¶ 14–40, ECF No. 23.) *Justice* is brought by different named plaintiffs. The FAC expressly excludes the *Justice*-named plaintiffs from every proposed class. (FAC ¶ 113(m), ECF No. 23.) Before certification, the relevant "parties" are the named plaintiffs, not absent class members. *Smith v. Bayer Corp.*, 564 U.S. 299, 313–16 (2011).

Udio argues that Plaintiffs' exclusion of the *Justice* named plaintiffs is an "implicit admission that the classes are duplicative." (Mem. at 16, ECF No. 31.) The argument inverts

19

reality. Plaintiffs excluded the *Justice* plaintiffs *precisely so that* the cases are not duplicative. That is responsible pleading. Udio further notes that Plaintiffs "make no similar request regarding overlapping class members from the two cases." (Mem. at 2, ECF No. 31.) But *Justice* is a putative class action without a certified class and therefore has no class members to exclude. Before certification, there are no absent class members bound by the action, only named plaintiffs and a proposed class definition. *Smith*, 564 U.S. at 313–16. Udio asks the Court to treat a hypothetical future overlap between two uncertified classes as a basis for dismissing or staying this case today. First-to-file does not require Plaintiffs to preemptively exclude members of a class that does not yet exist.

2. **The claims are fundamentally different.** This case asserts 14 counts. *Justice* asserts four. This case includes BIPA (Count XI), IRPA (Count XII), UDTPA (Count XIII), unjust enrichment (Count XIV), false CMI under § 1202(a) (Count VIII), anti-circumvention under § 1201 (Count VII), direct infringement of musical compositions including non-lyric expression (Count V), direct infringement of lyrics (Count IV), distribution under § 106(3) (Count II), contributory infringement (Count IX), and vicarious infringement (Count X). None of those counts appears in *Justice*.

Udio may argue that the state-law claims are "variations" on *Justice*'s Tennessee consumer-protection theory. But BIPA's notice-and-consent regime, statutory damages structure, and retention obligations are an entirely different legal framework from a Tennessee consumer-protection claim. IRPA protects a distinct right under a distinct statutory regime with distinct remedies. These are not different labels for the same right; they are different rights arising from different legislative judgments. The New York case cannot adjudicate Illinois-specific subclasses asserting Illinois statutory claims that the *Justice* plaintiffs never pled.

**3.** **The class definitions and predicates diverge in multiple directions.** A side-by-side comparison makes the point. This case proposes twelve classes and subclasses. (FAC ¶ 113(a)–(l), ECF No. 23.) *Justice* proposes six. (Justice Am. Compl. ¶ 353(A)–(F).) But the differences go far beyond numbers. The classes are built on fundamentally different membership predicates, temporal scopes, and legal theories.

**Membership predicates.** This case defines its core copyright classes by whether works "appear in any dataset Udio copied, ingested, or exploited for AI training during the Class Period." (FAC ¶ 113(a), ECF No. 23.) Justice defines its Registered Works Class by whether works were "made available on internet-based streaming services since January 1, 2021" and then copied or used by Udio. (Justice Am. Compl. ¶ 353(A).) Those are different gateways with different reach.

**Previously unregistered works.** This case includes a Previously-Unregistered Copyright Class and previously-unregistered subclasses for lyrics and compositions. (FAC ¶ 113(b), (d), (f), ECF No. 23.) Justice's Registered Works Class is limited to "U.S.-registered copyrights" (Justice Am. Compl. ¶ 353(A)), leaving artists with unregistered works without a class vehicle in that case.

**Temporal scope.** This case's "Class Period" is defined by the maximum limitations period (FAC ¶ 113(n), ECF No. 23); Justice uses a fixed cutoff of "since January 1, 2021" (Justice Am. Compl. ¶ 353(A)).

**Lyrics and non-lyric musical compositions.** This case defines separate subclasses for lyrics and non-lyric musical compositions, both registered and previously unregistered (FAC ¶ 113(c)–(f), ECF No. 23); Justice has neither.

21

**DMCA subclasses.** This case defines both a CMI-removal subclass under § 1202(b) and a separate § 1201 anti-circumvention subclass (FAC ¶ 113(g)–(h)); Justice defines only a single DMCA class limited to circumvention on streaming platforms (Justice Am. Compl. ¶ 353(C)), and has no CMI-removal analog.

**State-law subclasses.** This case defines four Illinois-specific subclasses: BIPA, IRPA, UDTPA, and unjust enrichment. (FAC ¶ 113(i)–(l), ECF No. 23.) Justice defines one state-law subclass: a Tennessee Resident Artist Subclass limited to Tennessee residents whose "names, voices, likenesses, producer tags, or other identifying elements of artistic persona were misappropriated." (Justice Am. Compl. ¶ 353(F).) An Illinois resident with a BIPA claim has a class vehicle in this case; that person has no class vehicle and no claim in Justice.

These are not cosmetic variations. They define who is in each class, what legal theories support each class's claims, and what relief each class can obtain. A resolution of Justice would not resolve the claims of Plaintiffs' proposed classes and subclasses here, because the class membership predicates, the temporal windows, the substantive legal theories, and the state-law subclasses do not overlap.

**The available relief differs.** *Justice* cannot supply BIPA statutory damages ($5,000 per intentional violation under 740 ILCS 14/20), IRPA injunctive relief and damages (765 ILCS 1075/40–55), or UDTPA compliance orders (815 ILCS 510/3) for Illinois residents. Because the New York case cannot dispose of the Illinois claims at the core of this action, the cases are not duplicative.

**C.      The equitable remedy for any overlap is coordination, not dismissal or a stay.**

Even if the Court perceives overlapping legal questions at a general level, dismissal or a blanket stay is the wrong remedy where, as here, the later case includes different plaintiffs,

different class predicates, and distinct state-law rights and remedies not being litigated in *Justice*. If the Court identifies any concrete risk of duplicative work on a discrete issue, it can manage that risk through coordination of document productions, cross-noticed depositions, or harmonized protective orders, tools that accomplish the doctrine's purpose without exporting an Illinois-anchored case to the defendant's preferred forum.

## IV. Transfer to the Southern District of New York Should Be Denied.

Under 28 U.S.C. § 1404(a), Udio bears the burden to show that S.D.N.Y. is clearly more convenient and that transfer would serve the interest of justice. *Research Automation*, 626 F.3d at 978–79; *Heller*, 883 F.2d at 1293. A transfer that merely shifts inconvenience from the defendant to the plaintiffs is improper. *Heller*, 883 F.2d at 1293. Udio does not carry that burden.

### A. The private-interest factors do not favor transfer.

**1. Plaintiffs' choice of forum deserves deference.** Eight of ten named Plaintiffs are Illinois-based, Illinois statutory claims are central, and Udio is alleged to repeatedly engage in subscription commerce and output delivery in this District. (FAC ¶¶ 14–32; ¶ 45(a7)–(a16), ECF No. 23.) Illinois is not an arbitrary forum. It is where eight Plaintiffs live, where they created their works, and where the Illinois statutory claims arose. The two non-Illinois Plaintiffs are not in New York; transfer would not improve their convenience. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003).

**2. The situs of material events is not exclusively New York.** The Sanchez Declaration states that development "emanate[s] from New York" (¶ 11, ECF No. 31 Ex. C), but "emanate from" is not "exclusively occur in." The Declaration says nothing about where commercialization, subscription processing, output delivery, or biometric data collection occur.

23

And Udio's content is "hosted and served by third parties" that "operate nationwide." (Sanchez Decl. ¶ 10, ECF No. 31 Ex. C.)

        **3.**      **The evidence is overwhelmingly digital.** The Sanchez Declaration says documents "would be retrieved by employees located in New York" (¶ 12, ECF No. 31 Ex. C)—that says where employees sit, not that data is location-bound. Udio offers no showing that production in this District would be burdensome.

        **4.**      **Udio's witness showing is thin.** Three party witnesses, zero non-party witnesses. (Sanchez Decl. ¶ 13, ECF No. 31 Ex. C.) The transfer would shift inconvenience from Udio's three co-founders to Plaintiffs' eight Illinois-based representatives.

    **B.**      **The interest-of-justice factors do not favor transfer.**

        **1.**      **Related litigation does not compel transfer.**

This case is not duplicative of *Justice v. Udio*: different plaintiffs, 14 counts versus four, different class predicates, and different relief, including Illinois statutory remedies *Justice* cannot provide. Coordination mechanisms can manage any discrete overlap without uprooting this action.

        **2.**      **Docket statistics do not compel transfer.**

S.D.N.Y.'s median time to trial is shorter (34.2 months versus 56.4 months). (ECF No. 31 Ex E.) But those are district-wide averages across all civil cases and do not predict timelines for complex class-action IP litigation, which will take years in either forum.

        **3.**      **Illinois's sovereign interest is the decisive factor.**

Illinois enacted BIPA and IRPA to protect Illinois residents from unauthorized collection and commercial exploitation of their biometric data and identities. 740 ILCS 14/5; 765 ILCS 1075/5. This case asserts claims under both statutes, brought by Illinois plaintiffs alleging

24

Illinois-directed conduct. New York has no state-law claims at stake and no regulatory interest in the protections at issue. Its only connection is that Udio, a Delaware corporation, keeps an office there.

Udio cites the "apparent trend" to grant transfer where similar class actions are pending in different districts. (Mem. at 18, ECF No. 31 (citing *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063 (N.D. Ill. 2015)).) But *Rosen* did not involve forum-specific statutory claims, giving the forum state a regulatory interest that the transferee state does not share. Transfer would shift inconvenience from Udio to Plaintiffs without any net gain in convenience or justice. The Court should deny the motion.

## CONCLUSION

Udio operates a nationwide subscription business that repeatedly contracts with Illinois residents, takes their money, performs its service for users here, and delivers the challenged outputs into this District. Udio's CEO, given the opportunity to deny those commercially significant facts under oath, declined to do so. Due process does not permit Udio to profit from Illinois commerce while claiming immunity from Illinois courts.

The first-to-file doctrine and § 1404(a) do not authorize Udio to export this Illinois-anchored case, with its Illinois plaintiffs, Illinois-directed commercial conduct, and Illinois statutory claims, to New York based on the assertion that a different case, brought by different plaintiffs and asserting a fraction of the claims at issue here, is already pending there.

For these reasons, Plaintiffs respectfully request that the Court deny Defendant Uncharted Labs, Inc.'s Motion to Dismiss in its entirety.

25

Dated: March 6, 2026

LOEVY & LOEVY

/s/ Ross Kimbarovsky

_____

Ross Kimbarovsky (6229590)
ross@loevy.com
Jon Loevy (6218524)
jon@loevy.com
Michael Kanovitz (6275233)
mike@loevy.com
Matthew Topic (6290923)
matt@loevy.com
Aaron Tucek   (98624)
aaron@loevy.com
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902 (fax)

*Attorneys for Plaintiffs David Woulard, Attack the*
*Sound LLC, Stan Burjek, James Burjek, Berk Ergoz,*
*Hamza Jilani, Maatkara Wilson, Arjun Singh,*
*Magnus Fiennes, and Michael Mell.*

26

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 6, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ Ross Kimbarovsky

_____

Ross Kimbarovsky