# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>UNCHARTED LABS, INC. d/b/a Udio.com and UNKNOWN DEFENDANTS,<br><br>    Defendants. | Case No.: 25-cv-12613<br><br>District Judge Sara Ellis<br><br>Magistrate Judge Jeannice Appenteng |

**DEFENDANT UNCHARTED LABS, INC.'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION PURSUANT TO
FED. R. CIV. P. 12(b)(2), OR IN THE ALTERNATIVE, TO DISMISS
OR STAY PURSUANT TO THE FIRST-FILED DOCTRINE, OR IN THE
<u>ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)</u>**

Andrew H. Schapiro
Bevin Brennan
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
andrewschapiro@quinnemanuel.com
bevinbrennan@quinnemanuel.com

**TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................1

ARGUMENT......................................................................................................................2

I.     Plaintiffs Concede That This Court Does Not Have General Jurisdiction Over Udio, And This Court Lacks Specific Personal Jurisdiction Over Udio. ...........................2

     A.     Plaintiffs' subscription-based theory does not establish purposeful availment.........................................................................................................3

     B.     Plaintiffs' "totality" argument cannot rescue their jurisdictional theory. ...............6

     C.     Plaintiffs' claims do not arise out of or relate to any Illinois contacts. ...................7

          1.     Plaintiffs' copyright and DMCA claims have no nexus to Illinois..............7

          2.     Plaintiffs' Illinois statutory claims do not establish jurisdiction. ................8

          3.     Plaintiffs' "effects" theory fails. ..................................................................9

     D.     Exercising jurisdiction would offend fair play and substantial justice....................9

     E.     Jurisdictional discovery is unwarranted..............................................................11

II.     The First-to-File Doctrine Warrants Dismissal or a Stay. .................................................11

     A.     The parties overlap...............................................................................................11

     B.     The claims overlap................................................................................................12

     C.     The classes overlap. .............................................................................................12

     D.     Dismissal or a stay is the appropriate remedy. ......................................................13

III.     Transfer to the Southern District of New York Is Warranted............................................13

IV.     Plaintiffs' Venue Argument Is Misdirected.......................................................................15

CONCLUSION.................................................................................................................15

## TABLE OF AUTHORITIES

### Cases

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ..................................................................................3, 7

*Ariel Investments, LLC v. Ariel Capital Advisors LLC*,
  881 F.3d 520 (7th Cir. 2018) ......................................................................................10

*Asahi Metal Industry Co. v. Superior Court*,
  480 U.S. 102 (1987)......................................................................................................9

*Baker Dental Corp. v. Aurex Dental Inc.*,
  2014 WL 4414520 (N.D. Ill. Sept. 5, 2014) ................................................................6

*be2 LLC v. Ivanov*,
  642 F.3d 555 (7th Cir. 2011) ...........................................................................3, 4, 7, 8

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
  582 U.S. 255 (2017)......................................................................................................8

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...............................................................................................5, 6, 9

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) ..................................................................................1, 11

*Concord Music Group, Inc. v. Anthropic PBC*,
  738 F. Supp. 3d 973 (M.D. Tenn. 2024)...................................................................6, 8

*Curry v. Revolution Lab'ys, LLC*,
  949 F.3d 385 (7th Cir. 2020). (Opp. .)......................................................................3, 6

*In re Extended Stay Hotel Antitrust Litig.*,
  2024 WL 5089159 (N.D. Ill. Dec. 12, 2024).............................................................14

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021).......................................................................................1, 5, 7, 8, 9

*George & Co. LLC v. Target Corp.*,
  2021 WL 2948910 (N.D. Ill. July 14, 2021). (Mem. .).........................................14, 15

*Gullen v. Facebook.com, Inc.*,
  2016 WL 245910 (N.D. Ill. Jan. 21, 2016)........................................................1, 8, 10

*Humphrey v. United Healthcare Servs., Inc.*,
  2014 WL 3511498 (N.D. Ill. July 16, 2014)...............................................................12

*Hussein v. Adidas America, Inc.*,
2023 WL 8787791 (N.D. Ill. Dec. 19, 2023)..................................................................13

*Illinois v. Hemi Grp. LLC*,
622 F.3d 754 (7th Cir. 2010) ..........................................................................................3, 4

*Jaramillo v. DineEquity, Inc.*,
664 F. Supp. 2d 908 (N.D. Ill. 2009) .................................................................................14

*Lukis v. Whitepages, Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) .................................................................................10

*Monco v. Zoltek Corp.*,
342 F. Supp. 3d 829 (N.D. Ill. 2018) .................................................................................10

*N. Grain Mktg., LLC v. Greving*,
743 F.3d 487 (7th Cir. 2014) ..........................................................................................5, 6

*In re Nat'l Presto Indus., Inc.*,
347 F.3d 662 (7th Cir. 2003) ............................................................................................14

*Nicholson v. Nationstar Mortg. LLC of Del.*,
2018 WL 3344408 (N.D. Ill. July 6, 2018)..............................................................11, 12, 13

*NTE LLC v. Kenny Constr. Co.*,
2015 WL 6407532 (N.D. Ill. Oct. 21, 2015).....................................................................10

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ..........................................................................................2, 5

*Shenzhen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*,
2024 WL 2845974 (N.D. Ill. June 5, 2024)........................................................................15

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011)...........................................................................................................12

*Tamburo v. Dworkin*,
601 F.3d 793 (7th Cir. 2010) ..............................................................................................9

*uBID, Inc. v. GoDaddy Grp., Inc.*,
623 F.3d 421 (7th Cir. 2010) ..............................................................................................4

*Walden v. Fiore*,
571 U.S. 277 (2014)..................................................................................................7, 9, 10

## Rules

Federal Rule of Civil Procedure 12(b)(2) ........................................................................15

**Statutes**

28 U.S.C. § 1391(b) ..............................................................................................................15

28 U.S.C. § 1400(a) .............................................................................................................15

28 U.S.C. § 1404(a) .......................................................................................................13, 15

**INTRODUCTION**

Plaintiffs' Opposition brief (Dkt. 33) confirms there is no basis for this Court to exercise personal jurisdiction over Defendant Uncharted Labs, Inc. ("Udio"). It also fails to establish that the case should not in the alternative be dismissed or stayed pursuant to the first-to-file doctrine, or transferred to the Southern District of New York.

With respect to personal jurisdiction, Plaintiffs rely solely on specific jurisdiction. In most instances, Plaintiffs' arguments are unsupported by any case law whatsoever. And nowhere in their Opposition do Plaintiffs cite a single case that finds jurisdiction over a defendant in a situation involving only online contacts. The primary authority upon which Plaintiffs rely is *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), a case which Plaintiffs contend upends all of the law regarding jurisdictional analysis as applied to the operation of a website. (Opp. at 5, 8, 12, 13 and 15.) Plaintiffs are wrong: *Ford*, which involves personal injury claims arising from a defective automobile, does not alter the jurisdictional analysis as it pertains to websites. When Plaintiffs do address the settled caselaw cited in Udio's opening brief, it is to argue incorrectly that these internet-specific jurisdictional cases do not apply here. (Opp. at 5-9.) Plaintiffs' inability to cite a single case supporting their position about personal jurisdiction in the era of the internet is telling: there is no support for finding personal jurisdiction over Udio here.

Plaintiffs try to salvage jurisdiction by citing their Illinois-specific statutory claims under the Illinois Right of Publicity Act ("IRPA") and Biometric Information Privacy Act ("BIPA"). But these claims do not change the jurisdictional calculus. For instance, *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016), which was not, as Plaintiffs wrongly contend, abrogated by *Ford*, held that BIPA could not confer personal jurisdiction. (Opp. at 15.) Last, Plaintiffs' request for discovery is unwarranted, as they have made no showing that discovery is likely to provide any basis for jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v.*

1

*Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."). The case should be dismissed for this reason alone. (Opp. at 19-21.)

In the alternative, Plaintiffs' claims should be dismissed or stayed pursuant to the first-to-file doctrine. The first-to-file doctrine does not require a complete overlap of claims, and the pending case *Justice v. Udio*, No. 1:25-cv-5026 (S.D.N.Y.) ("*Justice*") plainly qualifies as a duplicative case under the standards applied in the Seventh Circuit and in this district. Without identifying any authority whatsoever, Plaintiffs ask this Court to disregard the well-settled law and to create a new doctrine of "coordination" of the cases. (*Id.* at 22-23.) Plaintiffs' request should be rejected.

Finally, also in the alternative, Plaintiffs' claims could be transferred to the Southern District of New York, where Udio is located and where the *Justice* case is already pending.

For all of these reasons, Udio's motion to dismiss, or in the alternative to stay or transfer the case, should be granted.

## ARGUMENT

**I. Plaintiffs Concede That This Court Does Not Have General Jurisdiction Over Udio, And This Court Lacks Specific Personal Jurisdiction Over Udio.**

Plaintiffs do not contend that this Court has general jurisdiction over Udio. (Mem. at 4-5; Opp. *generally* (failing to argue for general jurisdiction).) Plaintiffs therefore rely solely on specific personal jurisdiction. But as discussed below, Plaintiffs fail to satisfy their burden. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (holding that once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden to demonstrate jurisdiction).

2

**A.      Plaintiffs' subscription-based theory does not establish purposeful availment.**

Plaintiffs' First Amended Complaint includes 59 subparagraphs alleging supposed contacts with Illinois (including, for example, "contacts" about what third-party users may subsequently do on their own volition) (FAC at 13-27), but in their brief, Plaintiffs abandon almost all of their allegations other than those about Illinois residents who subscribe to Udio's service.  (Opp. at 5-9.)  The Seventh Circuit has never endorsed such a broad jurisdictional theory, and Plaintiffs do not identify a single case that does.

To the contrary, as explained in Udio's opening Memorandum (Mem. at 5), the Seventh Circuit has held that "[b]eyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." *be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011) (emphasis original).  The Seventh Circuit has also held that allowing users from any state to create accounts does not amount to targeting Illinois simply because some of the website's subscribers "may happen to live there." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014).

Plaintiffs try to escape these holdings by characterizing Udio's subscriptions as "active commerce" rather than "passive accessibility." (Opp. at 8.)  But in *Advanced Tactical*, the Seventh Circuit held that "interactivity" of a website—including the ability to purchase products—is a "poor proxy for adequate in-state contacts."  751 F.3d at 803.  Plaintiffs also invoke *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385 (7th Cir. 2020).  (Opp. at 6.)  But that decision emphasized the repeated, deliberate shipment of tangible goods into Illinois established jurisdiction.  949 F.3d at 399-400.  Udio does not ship physical products to Illinois.

Plaintiffs' reliance on *Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2010), fares no better.  (Opp. at 6-7.)  In *Hemi*, the defendant shipped cigarettes into Illinois and deliberately "excluded New York residents from its customer pool" while "expressly elect[ing] to do business

3

with the residents of forty-nine states." 622 F.3d at 757-58. These affirmative choices about which states to serve and which to exclude demonstrated purposeful direction at each included state. Udio has made no such state-specific choices, nor does Udio ship physical products into Illinois.

Plaintiffs allege that Udio "repeatedly performs the core service for Illinois users and delivers the product into Illinois" through "repeated, bilateral exchanges." (Opp. at 7.) But that is immaterial. Every interactive website responds to users' inputs with customized content—that is what "interactive" means. A search engine returns customized results; a streaming service delivers chosen content; a mapping application generates personalized directions. The Seventh Circuit has expressly rejected this logic, holding that even "highly interactive" websites do not confer jurisdiction absent forum-specific targeting. *be2*, 642 F.3d at 559; *Hemi*, 622 F.3d at 760.

Plaintiffs' citation to *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421 (7th Cir. 2010), is likewise unavailing. (Opp. at 7.) In *uBID*, the Seventh Circuit found specific jurisdiction based on the defendant's deliberate exploitation of the Illinois market through a high-profile "nationwide advertising campaign" and a "blanket of advertising in Illinois," which included billboards at Chicago's sporting stadiums. 623 F.3d at 427-30. The defendant "deliberately exploited the Illinois market" through sustained, targeted commercial activity that went far beyond merely operating a website accessible to Illinois residents. *Id.* at 433. Udio, in contrast, has no billboards at Wrigley Field or Illinois-specific marketing of any kind. (Dkt. 31, Ex. C, Sanchez Decl. ¶ 6.)

Plaintiffs' favored *Ford* case confirms there is no personal jurisdiction over Udio here. (Opp. at 8.) Plaintiffs go so far as to say that the Supreme Court found personal jurisdiction over Ford because "Ford sold identical vehicles in all 50 states and did not target Montana or Minnesota with unique products or advertising." (*Id.*) While the qualifier "unique" makes that sentence technically true, it is not a fair representation. The Supreme Court relied on Ford's extensive sales,

4

advertising and other activities within those states, not whether the product at issue was "unique":

> By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, including (at all relevant times) Explorers and Crown Victorias. Ford cars—again including those two models—are available for sale, whether new or used, throughout the States, at 36 dealerships in Montana and 84 in Minnesota. And apart from sales, Ford works hard to foster ongoing connections to its cars' owners. The company's dealers in Montana and Minnesota (as elsewhere) regularly maintain and repair Ford cars, including those whose warranties have long since expired. And the company distributes replacement parts both to its own dealers and to independent auto shops in the two States.

> 592 U.S. at 365.

This case is nothing like *Ford*. Udio does not buy billboards, TV and radio spots in Illinois, does not buy print ads in Illinois or purchase direct mailers to Illinois residents. (Dkt. 31, Ex. C, Sanchez Decl. ¶ 6.) It does not have dealers in or ship any products (like replacement parts) to Illinois.

Nor does *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), save Plaintiffs' argument. (Opp. at 5-7, 9, 11, 15-16.) The defendant in *Burger King* affirmatively "reached out" to Florida, negotiated a franchise agreement with a Florida corporation, and entered a "carefully structured 20-year relationship" with long-term regulation from Burger King's Miami headquarters. 471 U.S. at 479-80. Applying *Burger King*, the Seventh Circuit has stated that "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014) (quoting *Purdue Rsch. Found.*, 338 F.3d at 781). Courts must evaluate the parties' "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *Id.*

Here, the parties did not engage in any negotiation over a contract. The "contemplated future consequences" extend no further than the next billing cycle. *N. Grain Mktg.*, 743 F.3d at 493. And the "course of actual dealing" consists of automated online interaction. *Id.* Where, as here, the contracts involve "discrete task[s]" rather than "continuing obligations," they do not

create the substantial contacts contemplated by *Burger King*. *N. Grain*, 743 F.3d at 494-96; *see also Baker Dental Corp. v. Aurex Dental Inc.*, 2014 WL 4414520, at *3 & n.4 (N.D. Ill. Sept. 5, 2014) (the discrete task of collecting payment is not sufficient for jurisdiction).

The recent decision in *Concord Music Group, Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 988-89 (M.D. Tenn. 2024), is instructive. In a factual scenario similar to this case, the court held that an AI company's delivery of outputs to forum-state users upon request was insufficient to establish purposeful availment. The court reasoned that the plaintiffs had failed to show the defendant "deliberately interacted with [forum] residents in a meaningful way beyond 'random or fortuitous events' of users interacting with [the AI product]" while in the forum. *Id.* at 988. Allowing users in the forum-state to access the defendant's AI models did not constitute purposeful availment by the defendant. *Id.* at 989. That is precisely the situation here.

**B.      Plaintiffs' "totality" argument cannot rescue their jurisdictional theory.**

Udio demonstrated that the 59 separate sub-paragraphs in the FAC regarding jurisdiction are for the most part irrelevant and/or have nothing to do with whether the Court can exercise jurisdiction over Udio. In response Plaintiffs insist that Udio's evisceration of those allegations is somehow a "strawman." (Opp. at 9.) Plaintiffs now contend it is not proper to "atomize" their 59 jurisdictional sub-paragraphs into categories and dispatch each one individually. (Opp. at 9.) That is not the law, and the cases Plaintiffs cite for this theory—*Burger King*, 471 U.S. at 476 and *Curry*, 949 F.3d at 399-402—do not support their novel position (which would create nationwide jurisdiction over almost any company with a website). Those cases simply reiterate the "minimum contacts" test.

The Sanchez Declaration establishes that Udio has no employees in Illinois, no office in Illinois, no Illinois-specific advertising, no geotargeting of Illinois users, and no product features directed at Illinois. (Dkt. 31, Ex. C, Sanchez Decl. ¶¶ 5-9.) Plaintiffs do not contest any of these

facts. The best they can do is to say that the Declaration is "notable for what it does not deny"—primarily the subscription point. (Opp. at 11.) That Illinois residents, like residents of every other state, may subscribe to a nationally available service does not establish that Udio purposefully directed its activities at Illinois. *See Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) (jurisdiction depends on the defendant's contacts with the "forum State itself, not the defendant's contacts with persons who reside there"); *be 2*, 642 F.3d at 558-59; *Adv. Tactical*, 751 F.3d at 802-03. The facts set forth in the Sanchez Declaration confirm that this Court cannot exercise personal jurisdiction over Udio.

### C. Plaintiffs' claims do not arise out of or relate to any Illinois contacts.

Even if Plaintiffs had alleged that Udio had sufficient minimum contacts with Illinois to constitute purposeful availment, their claims would still fail because the alleged contacts do not "arise out of or relate to" Udio's alleged Illinois contacts. *Ford*, 592 U.S. at 141. Plaintiffs' three arguments confirm that their claims fail this second prong. (Opp. at 12-15.)

### 1. Plaintiffs' copyright and DMCA claims have no nexus to Illinois.

Plaintiffs' copyright claims rest on the allegation that Udio "copied and used" copyrighted recordings to train its AI model. (FAC ¶ 61.) That training occurred in New York. (Dkt. 31, Ex. C, Sanchez Decl. ¶ 11.) No aspect of the model's training was directed at Illinois, occurred in Illinois, or was influenced by the existence of Illinois subscribers. Plaintiffs' core claims have nothing to do with Illinois.

Plaintiffs argue that Udio's subscription service is the "delivery mechanism" for the alleged harm and that Udio's "subscription revenue … is directly attributable to the very product built on the alleged unauthorized use of Plaintiffs' works." (Opp. at 12-13.) That argument conflates the allegedly wrongful conduct (training an AI model on copyrighted works) with downstream commercial activity of the resulting product (allowing subscribers to access the resulting service).

7

*Bristol-Myers Squibb* forecloses this kind of reasoning. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017) (rejecting the theory that a defendant's general nationwide commercial activity establishes jurisdiction in any particular forum for claims untethered to forum-specific conduct); *see also Anthropic*, 738 F. Supp. 3d at 986 (declining to exercise jurisdiction where there was "nothing to suggest that [defendant] provided [AI product] access to these Tennessee businesses *because* they were in Tennessee" and finding these to be "fortuitous" contacts) (emphasis original); *be2 LLC*, 642 F.3d at 558-59 ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market.") (emphasis original).

Plaintiffs fall back on as single case, *Ford*, which as discussed above, has nothing to do with copyright or even jurisdiction involving the internet. *Supra* at 4-5. (Opp. at 13.) Plaintiffs cite no other case law, demonstrating the absence of support for their argument.

### 2. Plaintiffs' Illinois statutory claims do not establish jurisdiction.

Plaintiffs argue that their BIPA and IRPA claims provide "an independent, especially strong basis for suit-relatedness." (Opp. at 13-15.) But labeling a claim "Illinois-specific" does not resolve the threshold purposeful availment inquiry, which requires Udio to have suit-related contacts with Illinois. Udio is alleged to have trained its model on publicly available content from the internet. (FAC ¶¶ 61, 64.) Udio did not target Illinois residents' biometric data. A plaintiff who "does not allege that [the defendant] targets its alleged biometric collection activities at Illinois residents" cannot invoke BIPA to establish jurisdiction. *Gullen*, 2016 WL 245910, at *2.

Plaintiffs argue that *Gullen* has been "overtaken" by *Ford*. (Opp. at 14-15.) That is not correct. *Ford*'s expansion of the relatedness inquiry did not eliminate the threshold requirement of purposeful availment, which *Gullen* addressed. And *Ford* requires that there be an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that

8

takes place in the forum State." 592 U.S. at 359-60 (citation omitted). Udio's alleged collection of data from publicly available online sources—not from Illinois-specific sources or involving Illinois-directed activities—provides no such affiliation.

### 3. Plaintiffs' "effects" theory fails.

Next, Plaintiffs insist they are not relying on an "effects" theory alone and that their nexus theory is "defendant-focused," as required by *Walden*. (Opp. at 15.) But in this argument, Plaintiffs rely on Plaintiff or user-focused arguments. They cite the subscriptions of and outputs created by users. (*Id.*) Plaintiffs cite the "injuries" allegedly occurring in Illinois under BIPA and IRPA. (*Id.*) Nothing in Plaintiffs' argument creates any contacts with Illinois other than the fortuitous location of any Plaintiff (and not even all Plaintiffs) or third-party users, not Udio.

### D. Exercising jurisdiction would offend fair play and substantial justice.

Exercising jurisdiction would not comport with fair play and substantial justice. (Opp. at 15-16.) The exercise of jurisdiction here would be unreasonable under *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987), and *Burger King*. 471 U.S. at 476-77.

First, the burden on Udio is substantial. Udio is based in New York, with all its witnesses and operations there. (Dkt. 31, Ex. C, Sanchez Decl. ¶¶ 4, 5, 12-13.) It has no presence in Illinois.

Second, Illinois's interest in adjudicating this dispute is low. At the core of this case are federal copyright and Digital Millenium Copyright Act claims with no special Illinois connection. The alleged infringement has no nexus to Illinois. While Plaintiffs assert Illinois statutory claims under BIPA and IRPA, those claims depend on the same predicate conduct (the alleged use of publicly available content to train the AI model) and do not independently give Illinois a stronger interest than New York. Plaintiffs cite only two cases, contending that the inclusion of Illinois state statutory claims creates a strong interest in adjudicating this dispute. (Opp. at 16.) But one of those two cases, *Tamburo v. Dworkin*, 601 F.3d 793 (7th Cir. 2010), has been called into doubt

9

by numerous courts in this district following the Supreme Court's decision in *Walden*. *See Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 835 (N.D. Ill. 2018) (stating that "the Court has significant doubt as to whether these statements of the law [including quotations from *Tamburo*] are correct under *Walden*, especially in light of the Seventh Circuit's recent discussion of *Walden* in *Ariel Investments*"); *NTE LLC v. Kenny Constr. Co.*, 2015 WL 6407532, at *3 (N.D. Ill. Oct. 21, 2015) (noting that the *Tamburo* case "attached great weight to the effects or injury felt in the forum state" and that "[a]fter *Walden*, this approach is likely no longer good law."). In *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018), the Seventh Circuit applied *Walden* and rejected the argument that "a defendant should be subject to personal jurisdiction in any state at which it 'aimed its actions,'" finding that "incompatible with *Walden*." As in *Ariel Investments*, "it is easy to describe the relation between *Illinois* and [the defendant]: none." *Id.* (emphasis original). And "[t]hat resolves this litigation." *Id.*

In the other case cited by Plaintiffs, unlike here, the defendant expressly published online personal information about the specific Illinois-based plaintiffs, including their names and Illinois addresses. *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746, 752 (N.D. Ill. 2020) (showing publication of information expressly including Illinois addresses). That was considered purposeful availment. In this case, to the contrary, Plaintiffs do not even allege that Udio wrongfully used any of their specific works, let alone published any Illinois information. The Illinois state statutes provide no basis for exercising personal jurisdiction over Udio here. *See Gullen*, 2016 WL 245910.

Finally, the interstate judicial system's interest in efficient resolution counsels strongly in favor of a single forum. Requiring two courts to address the same core question risks inconsistent answers and wastes judicial resources.

### E. Jurisdictional discovery is unwarranted.

Plaintiffs request, in the alternative, "focused jurisdictional discovery" limited to Udio's Illinois subscriber counts, revenue, output delivery volume, billing records, and analytics data. (Opp. at 16-17.) This Court should deny Plaintiffs' request. Jurisdictional discovery is appropriate only where a plaintiff has made "a colorable or prima facie showing" that jurisdiction may exist and the discovery sought would likely fill the gaps. *Cent. States*, 230 F.3d at 946.

Plaintiffs previously submitted to this Court that "Plaintiffs stand on their allegations as sufficient for pleading purposes" for personal jurisdiction but sought to "reserve" their rights to seek discovery if not. (Dkt. 27 at 7, Joint Revised Initial Status Report.) But nothing in Plaintiffs' Opposition provides any reason for this Court to allow Plaintiffs to engage in jurisdictional discovery. Plaintiffs do not dispute anything in the Sanchez Declaration. (Opp. at 16-17.) Plaintiffs state only that they seek information about online subscribers, billing and revenue. (*Id.* at 17.) As discussed above, even if provided, that information would not provide a basis for this Court to exercise jurisdiction over Udio. *Supra* at 3-8. Where, as here, Plaintiffs' legal theory is insufficient regardless of any the requested discovery, discovery serves no purpose and should not be allowed.

## II. The First-to-File Doctrine Warrants Dismissal or a Stay.

Plaintiffs argue the first-to-file doctrine does not apply because this case is "not duplicative" of *Justice*. (Opp. at 19-22.) Plaintiffs are wrong on every factor.

### A. The parties overlap.

Plaintiffs contend that the cases involve "different named plaintiffs" and therefore the parties differ. (Opp. at 19.) But in comparing putative class actions for purposes of the first-to-file doctrine, courts focus on the putative class members, not the named plaintiffs. (Mem. at 16, citing *Nicholson v. Nationstar Mortg. LLC of Del.*, 2018 WL 3344408, at *5 (N.D. Ill. July 6,

11

2018).) *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), cited by Plaintiffs (Opp. at 19-20), addressed the Anti-Injunction Act and whether a second court can consider class certification after a previous denial, not personal jurisdiction. Here, both lawsuits seek to represent the same set of independent musicians against the same defendant on the same core theory. (Opp. at 19-20.)

### B. The claims overlap.

Plaintiffs argue that their lawsuit asserts fourteen counts while *Justice* asserts four, including extra Illinois statutory claims. (Opp. at 20.) But the first-to-file doctrine does not require "complete congruence of the issues." *Nicholson*, 2018 WL 3344408, at *7. Where, as here, the "claims and requested relief are all based on the same core factual allegations, they are sufficiently similar for purposes of the first-to-file rule." *Id.* at *8.

The gravamen of both cases is the same: Udio allegedly copied, ingested, and used copyrighted works without authorization to train its AI music generation model. Both cases seek classwide injunctive relief requiring Udio to cease infringing activity, the destruction of models trained on class works, statutory damages, and attorneys' fees. This is all that is needed for the first-to-file doctrine to apply. *Humphrey v. United Healthcare Servs., Inc.*, 2014 WL 3511498, at *2 (N.D. Ill. July 16, 2014). Plaintiffs do not cite a single case to support their position.

### C. The classes overlap.

Plaintiffs note minor differences in class definitions, but that does not undermine the application of the first-to-file doctrine. (Opp. at 21-22.) For example, Plaintiffs note that their copyright classes define membership by whether works "appear in any dataset Udio copied, ingested, or exploited for AI training," while *Justice* defines its class by whether works were "made available on internet-based streaming services since January 1, 2021" and then used by Udio. (*Id.* at 21; FAC ¶ 113(a); Justice Am. Compl. ¶ 353(a).) But the essential question remains whether Udio used class members' copyrighted works to train its model. Similarly, Plaintiffs observe that

their case includes subclasses for lyrics and non-lyric musical compositions, while the proposed *Justice* class does not. (Opp. at 21.) But the first-to-file doctrine does not require that class definitions be "mirror images"; it requires substantial similarity of the claims, parties, and relief. *Nicholson*, 2018 WL 3344408, at *7 ("there need not be complete congruence of the issues").

That this case includes BIPA and IRPA subclasses while *Justice* includes a Tennessee state-law subclass does not change the analysis. (Opp. at 22.) Both cases append state-specific claims to a core federal copyright theory, seeking the same fundamental relief against the same defendant for the same conduct. In *Hussein v. Adidas America, Inc.*, 2023 WL 8787791, at *1 (N.D. Ill. Dec. 19, 2023), this Court applied the first-to-file doctrine to competing class actions with different named plaintiffs and different state-law claims, holding that the "presumptive course of action is to defer [the] case in favor" of the first-filed action. *Id.* Plaintiffs do not address *Hussein*, and cite no supporting case law of their own.

### D. Dismissal or a stay is the appropriate remedy.

Plaintiffs suggest that "coordination" is the "equitable remedy" for any overlap. (Opp. at 22-23.) Plaintiffs cite no authority whatsoever for why this would be an "equitable remedy," or how any Court has ordered it or what it would even entail. If the Court is not inclined to dismiss the action based on the first-to-file doctrine but to stay it, Plaintiffs do not address the law regarding whether the Court should stay the action. (Opp. at 17-18; Mem. at 17-18.) By failing to address these factors—such as prejudice, simplifying issues and reducing the burden on the parties and the court (*id.*)—Plaintiffs concede that all of these factors weigh in favor of a stay.

### III. Transfer to the Southern District of New York Is Warranted.

In the alternative, Udio has shown that transfer is warranted pursuant to 28 U.S.C. § 1404(a). (Mem. at 18-24; Opp. at 23.)

*Plaintiff's choice of forum.* Plaintiffs cite *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003), to argue their choice of forum should prevail. (Opp. at 23.) That case was an SEC enforcement action, not a class action, and involved federal government issues. Plaintiffs ignore that a putative class action plaintiff's choice of forum is "greatly discounted" because the "choice of venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs," *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009), and is further reduced when, as here, another forum has a stronger relationship to the dispute. *George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *2 (N.D. Ill. July 14, 2021). (Mem. at 19-20.)

*Situs of material events.* The situs of the material events—namely Udio's decisions and operations—is the New York area. (Mem. 20-21.) Even Plaintiffs do not contend that any material events occurred in Illinois. (Opp. at 23-24; Mem. at 20-21.)

*Convenience of witnesses and access to proof.* Udio's principal witnesses and evidence are in or near New York. (Dkt. 31, Ex. C, Sanchez Decl. ¶¶ 11-13.) The fact that many documents are digital does not make Illinois convenient. (Opp. at 24.) Plaintiffs argue that eight Plaintiffs reside in Illinois. (*Id.*) But in a class action, no location is of particular convenience to Plaintiffs. (Mem. at 21-22, citing *In re Extended Stay Hotel Antitrust Litig.*, 2024 WL 5089159, at *4 (N.D. Ill. Dec. 12, 2024).)

*Interest of justice.* Udio showed that each of the five factors that courts consider in the "interest of justice" when deciding whether to transfer a case weigh in favor of Udio. (Mem. at 23-24.) Plaintiffs fail to address three of these factors, effectively conceding them. (Opp. at 24-25.) For the two factors that Plaintiffs do address—the interest in trying related litigation together and docket congestion—Plaintiffs offer cursory and insufficient responses. The same undefined

14

"coordination" of cases has no impact on the judiciary's preference to try related cases together. (*Id.* at 24.)  And Plaintiffs discount the docket statistics issued by the federal government as not specific to class-action IP cases.  (*Id.*)  But these statistics are what courts consider when assessing this factor.  (Mem. at 23, citing *George & Co.*, 2021 WL 2948910, at \*5; *see also Shenzhen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*, 2024 WL 2845974, at \*8 (N.D. Ill. June 5, 2024).)

Instead of addressing the factors, Plaintiffs assert that Illinois has a "sovereign interest" in adjudicating their BIPA and IRPA claims.  (Opp. at 24-25.)  But a transfer under § 1404(a) does not deprive Illinois of its sovereign interest.  Federal courts routinely oversee claims involving the laws of other states.  *See Shenzhen*, 2024 WL 2845974, at \*8 (finding that "federal judges routinely apply the laws of states" and that "the District of Massachusetts is presumed to be equally capable to apply Illinois law as is the Northern District of Illinois").

## IV.     Plaintiffs' Venue Argument Is Misdirected.

In a final note, Plaintiffs devote three pages to arguing that venue is proper under 28 U.S.C. § 1400(a) and § 1391(b).  (Opp. at 17-19.)  Udio has not moved to dismiss or transfer on this basis.

### <u>CONCLUSION</u>

Udio respectfully requests that the Court dismiss this case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  In the alternative, Udio requests that the Court dismiss or stay this case pursuant to the first-to-file doctrine, or transfer it to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

Dated:  April 3, 2026                                        Respectfully submitted,

UNCHARTED LABS, INC.,

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
Bevin Brennan

15

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
andrewschapiro@quinnemanuel.com
bevinbrennan@quinnemanuel.com

*Attorneys for Defendant Uncharted Labs, Inc.*

16

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 3, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro