**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAVID WOULARD, ATTACK THE SOUND )
LLC, an Illinois limited liability company, )
STAN BURJEK, JAMES BURJEK, BERK )
ERGOZ, HAMZA JILANI, MAATKARA )
WILSON, ARJUN SINGH, MAGNUS )
FIENNES, and MICHAEL MELL, each )
individually and on behalf of all others )
similarly situated, )
                                   )
        Plaintiffs, )
                                   )        No. 25 C 12613
      v. )
                                   )        Judge Sara L. Ellis
UNCHARTED LABS, INC., d/b/a Udio.com, )
and UKNOWN DEFENDANTS, )
                                   )
        Defendants. )

**OPINION AND ORDER**

After Plaintiffs, independent musicians based in Illinois, Georgia, and California, learned

that Defendant Uncharted Labs, Inc., doing business as Udio.com ("Udio"), trained its generative

artificial intelligence ("AI") music software on their music and lyrical content, Plaintiffs filed

this putative class action lawsuit against Udio on October 15, 2025.  Plaintiffs bring claims for

direct, contributory, and vicarious copyright infringement under 17 U.S.C. §§ 101 and 106.

Plaintiffs also allege violations of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C

§ 1201 *et seq.*, for removal or alteration of copyright management information, circumvention of

access controls, and false copyright management information.  Plaintiffs bring Illinois state law

claims as well, alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"),

740 Ill. Comp. Stat. 14/1 *et seq.*, and the Illinois Right of Publicity Act ("IRPA"), 765 Ill. Comp.

Stat. 1075/1 *et seq.*, for the alleged collection of biometric information in the form of voiceprints.

Finally, Plaintiffs bring claims for violations of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq.*, and unjust enrichment.

Udio now moves the Court to dismiss the first amended complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Alternatively, Udio moves to dismiss or stay the action pursuant to the first-filed doctrine, or to transfer venue pursuant to 28 U.S.C. § 1404(a).  The Court need not resolve the questions related to personal jurisdiction or the first-filed doctrine because it finds it appropriate to transfer this case to the United States District Court for the Southern District of New York, where Udio is headquartered and the related case of *Justice v. Uncharted Labs, Inc.*, No. 25-cv-5026 (S.D.N.Y), is pending.

## BACKGROUND

### I.     Jurisdictional Facts

Udio, a Delaware corporation, has its principal place of business in New York, New York.  It has no offices, employees, or other infrastructure in Illinois.  Udio produces and markets generative AI content in the form of high-quality songs that mirror human performances. Udio trains its models on a massive, centralized library containing high-quality copyrighted music files, including instrumentals, vocal performances, and lyrical content.  Udio allegedly obtains these materials by copying entire music files or scraping content from sources such as Common Crawl, which include massive lyric databases such as Genius and AZLyrics.  Outside of the copyrighted materials, Udio also allegedly collects biometric information and identifiers in the form of voiceprints (a mathematically derived model or representation of an individual's unique vocal characteristics).

Udio offers both free and paid plans to authenticated users, including users in Illinois.  It derives profits from users who make monthly payments in exchange for greater access to Udio's

2

AI-generated audio. Before temporarily disabling the feature in late 2025, Udio encouraged its users to share AI-generated content on third-party platforms.

Udio develops, trains, and operates its generative AI products in New York. Udio does not direct advertising specifically at Illinois residents, nor does it specifically geotarget Illinois users. Instead, Udio collects, processes, and analyzes user telemetry and analytics uniformly across the country to optimize performance and delivery of its content. In other words, it does not treat Illinois differently than any other state in which it does business.

Plaintiffs are several independent musicians and songwriters based in Illinois, California, and Georgia. They have released their music on major streaming platforms such as Spotify, Apple Music, and YouTube. Plaintiffs either own or exclusively control the sound recordings and musical compositions that Udio has allegedly used. Udio has generated and distributed audio outputs that replicate or simulate Plaintiffs' protected works and vocal identifiers. Plaintiffs seek to represent several classes and subclasses of musicians across the country.

## II.    The *Justice* Litigation

On June 18, 2025, a putative class of independent recording artists filed a similar case against Udio in the Southern District of New York. *Justice v. Uncharted Labs, Inc.*, No. 25-cv-5026 (S.D.N.Y). In *Justice*, the plaintiffs raise claims for copyright infringement, circumvention of technological measures, and unfair competition. *Justice* includes six classes or subclasses. On May 21, 2026, the court dismissed the *Justice* plaintiffs' copyright infringement claim based on the preparation of a derivative work and unfair competition claim. *Justice v. Uncharted Labs, Inc.*, No. 25 Civ. 5026, 2026 WL 1430232 (S.D.N.Y. May 21, 2026). The *Justice* plaintiffs have filed a motion to reconsider that decision, which remains pending.

**ANALYSIS**

Udio has moved to dismiss this case for lack of personal jurisdiction under Rule 12(b)(2). Alternatively, it argues that the Court should dismiss or stay the case until the conclusion of the *Justice* litigation based on the first-to-file doctrine. Finally, it asks the Court to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), where it has its headquarters and the *Justice* case is pending. Although courts typically must first resolve jurisdictional questions, they may bypass jurisdictional questions "when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007); *Adamczyk v. Miller*, No. 16-cv-00516, 2017 WL 11884322, at *2 (N.D. Ill. Mar. 29, 2017) ("Although jurisdictional questions are generally given priority over forum convenience issues, personal jurisdiction need not be established first."). The Court finds this to be such a situation, given that the transfer analysis makes clear that this case should proceed in the Southern District of New York, regardless of whether this Court has jurisdiction over Udio. The Court therefore addresses only the parties' arguments relating to transfer here. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("[W]hen there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue."); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("[U]nder 1404(a) as under 1406(a), the transferring court need not have personal jurisdiction over the defendants.").

Section 1404(a) provides that the Court may transfer venue to another district "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). For the Court to transfer the case under § 1404(a), Udio must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more

convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). Udio bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). The transfer decision is committed to the Court's sound discretion because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey*, 796 F.2d at 219. The parties do not meaningfully dispute the first two factors, and so the Court discusses only the convenience and interest of justice factors.[1]

Turning first to the convenience of the parties and witnesses, the Court considers: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties." *Sojka v. DirectBuy, Inc.*, No. 12 C 9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014). The Court typically gives the plaintiffs' choice of forum substantial weight where it is their home forum. *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006). But because Plaintiffs bring a nationwide class action, the Court gives their choice of forum less deference. *See Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant."); *Genden v.*

---

[1] Although Udio moves under § 1404(a), presumably acknowledging that venue lies in the Northern District of Illinois, Udio in passing stated in its memorandum that venue is not proper in Illinois. Doc. 31 at 26. This prompted Plaintiffs to make extensive arguments as to the propriety of venue in this district. Doc. 33 at 23–25. Udio clarified in its reply that it has not moved to dismiss or transfer the case based on improper venue, Doc. 34, which the Court understands as a concession that, at least for purposes of the transfer analysis under § 1404(a), Udio acknowledges that this district is a proper venue for Plaintiffs' claims. To the extent that venue is not proper in this district, the Court could still transfer the case pursuant to 28 U.S.C. § 1406(a). *See United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 896 (N.D. Ill. 2002) (under § 1406(a), a court may *sua sponte* transfer a case to a district "in which it could have been brought" if it is in the interest of justice).

*Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 621 F. Supp. 780, 782 (N.D. Ill. 1985) (noting that "the convenience of counsel" and "the location of the main class representative plaintiffs" are not "factors to be considered under Section 1404(a)"). *But see AL & PO Corp. v. Am. Healthcare Cap., Inc.*, No. 14 C 1905, 2015 WL 738694, at *2–3 (N.D. Ill. Feb. 19, 2015) (collecting cases discounting plaintiff's home forum in putative nationwide class actions but declining to adopt this approach). This district is not the home forum for all of the named Plaintiffs, and so regardless of whether the Court certifies a class, their chosen venue "will not be the home venue for all plaintiffs." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009). Moreover, if the Court certifies a nationwide class, "any venue selected is bound to be inconvenient to some plaintiffs." *Id.*

Regarding the location of material events, this factor tilts in favor of the Southern District of New York. The Court looks to "where the defendant's decisions and activities that gave rise to the claim took place." *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04 C 2728, 2004 WL 1921059, at *3 (N.D. Ill. July 21, 2004). In the corporate context, the Court considers "where the underlying business decisions were made." *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 716 (N.D. Ill. 2023). Here, Udio has provided evidence that its development, training, and operation of its generative AI take place in New York, while Plaintiffs have not offered anything suggesting that the allegedly problematic actions originated in Illinois. Therefore, this factor favors Udio.

The access to proof and convenience of witnesses factors fail to tip the balance one way or the other. Although Udio contends that documents are mainly located in New York, because documents are easily transferable in the digital age, the access to proof factor is neutral. *See Campbell v. Campbell*, 262 F. Supp. 3d 701, 710 (N.D. Ill. 2017) ("[I]n an era of electronic

6

documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." (citation omitted)); *Ballotti v. Oppenheimer Funds, Inc.*, No. 10 C 50116, 2011 WL 13382871, at *4 (N.D. Ill. Feb. 23, 2011) ("Modern technology has made it easy and cheap to transfer this kind of information between locations."). As for the convenience of witnesses, neither side identifies any non-party witnesses, and the Court gives party witnesses less weight because the Court presumes such witnesses will appear voluntarily. *Jaramillo*, 664 F. Supp. 2d at 915.

Turning to the convenience of the parties, the Court considers the parties' residences and their ability to bear the expense of litigating in each forum. *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999). "Transfer is not appropriate simply to shift the inconvenience from the defendants to the plaintiff." *Ballotti*, 2011 WL 13382871, at *4. Although a number of Plaintiffs reside in Illinois, others reside in Georgia and California. And the Court gives less weight to the presence of some Plaintiffs in this district because Plaintiffs bring the case as a putative nationwide class action, meaning no location is necessarily more convenient for all Plaintiffs. *See In re Extended Stay Hotel Antitrust Litig.*, No. 24 CV 6324, 2024 WL 5089159, at *4 (N.D. Ill. Dec. 12, 2024) ("[B]ecause the class of putative plaintiffs are nationwide customers . . . there is no location that is obviously more or less convenient for Plaintiffs."); *Simonoff v. Kaplan, Inc.*, No. 09 C 5017, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2010) ("Should litigating this case in the Southern District of New York prove too inconvenient for the named Plaintiff, then another named plaintiff can be substituted for her."). Further, the existence of the similar *Justice* litigation in the Southern District of New York, against which Udio already is defending, suggests that transfer would be more convenient for both parties, given that the *Justice* litigation likely involves many of the same witnesses,

7

evidence, and legal arguments, and that action has advanced further than this one. *See In re Extended Stay Hotel*, 2024 WL 5089159, at *5 (finding "the inconvenience of litigating the California action while litigating the substantially similar Illinois action" suggested that transfer served the "convenience of *both* parties"). Therefore, the convenience of the parties weighs in favor of transfer.

Moving to the interest of justice, this prong "relates to the efficient administration of the court system." *Rsch. Automation v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Courts consider the likelihood of a speedy trial, each court's familiarity with the applicable law, and each community's relationship to the controversy and interest in resolving it. *Id.*; *Coffey*, 796 F.2d at 221. These factors further tip the balance in favor of transfer to the Southern District of New York. First, although the Court acknowledges the complex nature of this case, the median time from filing to disposition and filing to trial is shorter in the Southern District of New York (5.6 months and 34.2 months, respectively) than in this district (7.1 months and 56.4 months, respectively).[2] This suggests a greater likelihood of a speedy trial and disposition in the Southern District of New York, made even more likely by the fact that the *Justice* court has already ruled on an initial motion to dismiss.

Familiarity with the relevant law does not factor into the Court's decision. The Court presumes that judges in both districts are equally familiar with the law governing Plaintiffs' federal and state claims. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013) ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."); *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1055 & n.2 (N.D. Ill. 2012) (collecting cases of courts "frown[ing] on the suggestion that the judges of one district are more

---

[2] These figures come from the website of the United States Courts detailing federal court management statistics as of June 2025. *See* https://www.uscourts.gov/sites/default/files/document/ fcms_na_distprofile0630.2025.pdf.

8

capable or experienced in a particular area than are judges of another district" because "hold[ing] otherwise would be inconsistent with the generalist nature of the United States district courts"). Both New York and Illinois have an interest in the outcome of this case, given that some Plaintiffs reside here and Udio has its headquarters in New York. *See Lewis*, 841 F. Supp. 2d at 1056 (one court had an interest in addressing complaints against corporations headquartered in its district, while the other court had an interest in protecting its citizens from infringement). Illinois may arguably have a greater interest with respect to the specific Illinois statutory claims raised in this case, but the putative nationwide reach of Plaintiffs' federal claims suggests that no community has a greater interest than another in the resolution of those claims. *See Jaramillo*, 664 F. Supp. 2d at 917 ("[B]ecause the putative class is national in scope, there is no compelling community interest that would be preserved by the selection of one venue over another.").

Finally, the Court agrees with Udio that transferring the case to the Southern District of New York would promote judicial economy and likely prevent duplicative litigation. "[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (citation omitted). While this case and *Justice* do assert some different claims, they arise from the same facts and raise many of the same legal issues. The potential for coordination and even consolidation thus supports transfer. *See Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 WL 56638, at *3 (N.D. Ill 2017) ("Cases in which the interest-of-justice element may be determinative include those where there is related litigation in a forum where consolidation is feasible." (citation omitted) (internal quotation marks omitted)); *Villalobos v. Cooper Tire & Rubber Co.*, No. 05 C 391, 2005 WL 8179132, at *2 ("The interests of judicial economy are

9

clearly served by transferring this case because potential consolidation would avoid duplicative litigation of both factual and legal issues and would avoid the possibility of contradictory outcomes.").

In sum, the Court finds that the convenience of the parties and witnesses, as well as the interest of justice, support transferring this case to the Southern District of New York, where the *Justice* litigation is pending.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Udio's motion to dismiss the first amended complaint or in the alternative to transfer venue [30]. The Court grants Udio's motion to transfer venue and orders the Clerk to transfer this case to the Southern District of New York. The Court denies Udio's motion to dismiss without prejudice to refiling in the Southern District of New York.

Dated: August 3, 2026

SARA L. ELLIS
United States District Judge